**UNITED STATES of America,
Appellee,**

**v.**

**Bernard Richard LEVI, Appellant.**

**No. 11416.**

United States Court of Appeals
Fourth Circuit.

Re-argued Oct. 7, 1968.

Decided Dec. 19, 1968.

Robert M. Price, Washington, D. C., court-appointed counsel, for appellant.

Alan B. Lipson, Asst. U. S. Atty. (Stephen H. Sachs, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

On November 17, 1965, the Southern Maryland Bank & Trust Company in Landover, Prince George County, Maryland, was held up and robbed of $11,648.20 by two men armed with a shotgun and a pistol. At a three-day trial in March 1967 Assistant Bank Manager John Larry Bruin identified Bernard Richard Levi as one of the robbers. He testified that Levi was brought to his place of employment on March 8, 1966, and that he was able to make a positive identification without any difficulty. Witness Bruin denied that he had even the slightest doubt that Levi was one of the men who robbed the bank on November 17, 1965. Under extended cross-examination Bruin conceded that he had been advised by FBI agents that they would bring someone to the bank to see whether he could identify him as a robber but denied that he was in "such a frame of mind that (he) would have identified any tall Negro male that entered the bank at that point when he came in with FBI agents," and denied that he was predisposed to identify anyone brought by the agents.

Mrs. Donna Sue Huddleston, a bank teller present at the time of the robbery, was unable to identify Levi as one of the robbers but corroborated Bruin with respect to height and complexion, saying that the defendant Levi resembled one of the robbers but that she did not get a close enough look at his face to make a positive identification. On cross-examination Mrs. Huddleston testified that she knew the defendant Levi when she saw him in the courtroom but that she could not say for sure that he was one of the men who entered the bank.

The only other person present in the bank at the time of the robbery was Mr. Preston Lee Tullos, a customer. He testified that both bandits were Negroes and that the one with the shotgun was light complected and relatively tall. He was shown ten photographs of ten different people by agents of the FBI as possible suspects and was unable to identify any of the photographs shown him. While on the witness stand he pointed out a bystander (not the defendant Levi) as being of the same complexion as one of the robbers. The record does not show whether the bystander's coloration was similar to Levi's or the other robber.

Levi urges upon us that he is entitled to have his conviction reversed on three grounds. He complains of the government's failure to offer the testimony of the bank customer Tullos as a part of its case in chief. The complaint is frivolous. There was not here the situation of government concealment of a witness who might contribute to the truth. The United States Attorney, with perfect candor, told counsel for Levi and the court that Tullos would be unable to positively identify the robber. Opportunity was afforded defendant's counsel to talk with Tullos for the purpose of determining whether to use him as a defense witness. At this point in the trial, by tacit agreement, Tullos was offered and testified as a witness for the government. The duty upon the government to prosecute fairly does not extend, we think, to a requirement that every possible witness who might know something, however slight, about the alleged offense must be sworn and offered before the government rests. So long as there is no deception, the government is free, we think, to select and choose those witnesses it prefers to use in making out its case. Here, the government called a witness whose testimony was

desired by the defendant when counsel for defendant was reluctant to call him as a defense witness. Instead of condemnation, the government deserves commendation for its obvious fairness.

We treat together the defendant Levi's other two assignments of error for they are closely related. He urges that the pretrial showing of the defendant Levi to witness Bruin for the purpose of identification was so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny the defendant due process of law. Secondarily, but in the same context, he urges that the government's evidence was insufficient to support the jury's verdict of guilty and that the district judge erred in denying defendant's motion for judgment of acquittal.

That guilt or innocence may sometimes turn upon the credibility of one witness has been always of concern to society because of the possibility of error or false swearing.[1] Yet it is well established at common law, with exceptions [2] not here pertinent, that ordinarily the testimony of one eyewitness is sufficient for the purpose of identification of the perpetrator of a crime.

Professor Wigmore states the common law rule even more broadly: "In general, the testimony of a *single witness*, no matter what the issue or who the person, *may legally suffice as evidence upon which the jury may found a verdict.*" 7 Wigmore, Evidence § 2034, p. 259. (Italics in original). This one-witness rule persists, and will probably last, because of society's strong interest in disposing of serious crimes, especially those of violence, some of which would remain unsolved but for the sometimes unsup-

ported testimony of the only witness to the act, frequently the victim. The common law rule has been restrengthened by a recent enactment [3] of the Congress: "§ 3502. Admissibility in evidence of eye witness testimony

"The testimony of a witness that he saw the accused commit or participate in the commission of the crime for which the accused is being tried shall be admissible in evidence in a criminal prosecution in any trial court ordained and established under article III of the Constitution of the United States." 18 U.S.C. § 3502.

The evidence at Levi's trial established by numerous witnesses that the crime was committed, i. e., the bank was robbed. The identification of Levi as one of the robbers rests in a "but for" sense upon the testimony of Bruin, but his positive identification is corroborated, albeit slightly, by the recited testimony obtained from Huddleston and Tullos. To be sure, their testimony is consistent with innocence and yet carries some slight weight of corroboration of characteristics of the robber or robbers depicted by Bruin. The district judge correctly emphasized to the jury that "the most crucial and basic finding that * * * you must make in this case concerns the identification of the defendant * * *."

In response to recurrent appeals questioning the sufficiency of one-on-one positive identification testimony to support a conviction, the Court of Appeals for the District of Columbia has promulgated a rule that when the defendant has placed his identification in issue, it is incumbent upon the trial court, on request, to specially instruct the jury (1)

---

1. "One witness shall not rise up against a man for any iniquity, or for any sin, in any sin that he sinneth: at the mouth of two witnesses, or at the mouth of three witnesses, shall the matter be established." Deut. 19:15.

2. Many of the exceptions relate to establishment of the commission of a crime, i. e., corpus delicti, rather than to any requirement of multiple witnesses to identify the alleged perpetrator.

3. We need not consider the impact of the statute upon United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), for this trial occurred prior to the effective date of *Wade*, June 12, 1967, and *Wade* is not retroactive. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

"that the evidence raises the question of whether the defendant was in fact the criminal actor and necessitates the juror's resolving any conflict in testimony upon this issue," and (2) "that the burden of proof is upon the prosecution with reference to every element of the crime charged and this burden includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime charged." Jones v. United States, 124 U.S.App.D.C. 83, 361 F.2d 537, 542 (1966). We approve. Judge Kaufman, we think, in the language quoted above and in other parts of his charge substantially gave such an instruction and with proper emphasis.

■ We adhere to the common law one-witness rule. We think that such a rule permits, but does not require, the trial judge to submit a criminal case to the jury wherein the finding of guilt must rest exclusively upon positive identification testimony of one witness uncorroborated by other circumstances. We hold that in this circuit a district judge has the power to refuse to permit a criminal case to go to the jury even though the single eye witness testifies in positive terms as to identity, and that he should so refuse unless he is himself persuaded by the demeanor, appearance and degree of apparent certainty of the witness, and by other factors affecting the integrity of the identification, that in all probability it is correct. In deciding whether to permit a criminal case to go to the jury, where identification rests upon the testimony of one witness, the district judge ought to consider with respect to identification testimony the lapse of time between the occurrence of the crime and the first confrontation, the opportunity during the crime to identify as compared with the opportunity of other witnesses who may be unable to do so, the reasons, if any, for failure to conduct a line-up or use similar techniques short of line-up [4], and the district judge's own appraisal of the capacity of the identifying witness to observe and remember facial and other features. In short, the district judge should concern himself as to whether the totality of circumstances "give[s] rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). See Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968). Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967 (1967).

The district judge denied the defendant's motion for acquittal made at the close of the government's case on the stated basis that "the government has made a prima facie case out, with the positive identification by the one witness." That alone is susceptible to the interpretation that the district judge may have erroneously thought that he *must* submit the case to the jury without regard to the substantiality of the identification. But subsequently, during the hearing of a motion for reduction in bail pending appeal, the district judge revealed clearly, we think, that he did not submit the case to the jury because he felt compelled to do so by a too rigid application of the one-witness rule, but that, instead, he fully concurred in the verdict of the jury finding Levi guilty beyond a reasonable doubt. At one point during the argument Judge Kaufman responded to counsel: "In my judgment, the record rather clearly substantiated and permitted that finding (guilt) or I would not have let the case go to the jury."

■ We think the Defendant Levi has had a fair trial free of prejudicial error and that his conviction is amply supported by the evidence.

Affirmed.

4. Cf. Wright v. United States, U.S.App.D.C., 404 F.2d 1256 (D.C.Cir. Jan. 1, 1968).