Albert **BRITTON**

v.

**STATE OF MARYLAND.**

**Civ. No. 20311.**

United States District Court
D. Maryland.

April 25, 1969.

Albert Britton pro se.

Alfred J. O'Ferrall, III, Asst. Atty. Gen., Baltimore, Md., for respondent.

FRANK A. KAUFMAN, District Judge.

Petitioner, who is presently a state prisoner confined in the Maryland House of Correction, seeks habeas corpus relief in this Court for the first time.

On June 14, 1965, Britton was found guilty of robbery with a deadly weapon after a non-jury trial in the Criminal Court of Baltimore City and was sentenced to a term in prison of twenty years. Thereafter, he appealed to the Court of Appeals of Maryland. That appeal was pending in that Court when the latter filed its opinions in Schowgurow v. State, 240 Md. 121, 213 A.2d 475 (1965), and State v. Madison, 240 Md. 265, 213 A.2d 880 (1965). In accordance with those opinions, Britton elected to exercise his right to have his conviction set aside and to be afforded a new trial. A second indictment, charging Britton with the same offense, was subsequently returned.

Britton's second trial, also non-jury, took place on November 7 and 16, 1966, in the Criminal Court of Baltimore City, before a different judge of that Court than the judge who had presided at the first trial. Britton was again found guilty of robbery with a deadly weapon and was sentenced, as he had been after his first trial, to serve a term of twenty years in the Maryland Penitentiary. The starting date of the sentence after the second trial was set at May 4, 1964, i. e., when Britton was originally confined.

Britton's second conviction was affirmed on appeal by the Court of Special Appeals of Maryland, Britton v. State, 2 Md.App. 285, 234 A.2d 274 (1967). Britton's application for a writ of certiorari was denied by the Court of Appeals of Maryland. *See id.* at 286, 234 A.2d 274. The same contentions which were considered by the Court of Special Appeals of Maryland on direct appeal and rejected on the merits by that Court are presented in this petition for federal habeas corpus relief. As the respondent has stated in its answer, it is clear that Britton has exhausted his available state remedies. Hamric v. Bailey, 386 F.2d 390 (4th Cir. 1967). This Court therefore proceeds herein to the merits.

## I.

The crime for which Britton was charged and convicted occurred on December 3, 1963, when a liquor store owned by Harry Lipsitz was robbed at gunpoint by two men. Both Mr. Lipsitz and a young employee, William Eggelston, witnessed the robbery. Lipsitz was unable to identify either of the two men (Tr. 5).[1] Eggelston, however, testified at Britton's first trial and identified Britton as the man who forced Eggelston to the rear of the store and stole money from Lipsitz and from the cash register (Tr. 34–36). Eggelston also testified at the first trial that he had picked Britton out of a lineup (Tr. 37). He was unable to identify the second of the two robbers (Tr. 41). At the time of the first trial, Eggelston was fifteen years old (Tr. 33).

When Britton's second trial commenced on November 7, 1966, the State's Attorney informed the trial judge that Eggelston was in Vietnam and asked permission to introduce into evidence the transcript of Eggelston's testimony at the previous trial (Tr. 6). A continuance was granted by the Court so that that transcript could be reproduced (Tr. 9). When the trial resumed on November 16, 1966, the transcript was available and the State again submitted its request to use Eggelston's first trial testimony as evidence in the second trial. Britton's counsel vigorously objected that this would be a violation of both state and federal law, the latter on the grounds that such use of the transcript was barred by the Fifth and Fourteenth Amendments (Tr. 12–22).[2] After the

---

1. All "Tr." references are to the transcript of Britton's second trial, i.e., the trial held on November 6 and 17, 1966.

2. The Confrontation Clause of the Sixth Amendment was not specifically referred to by Britton's counsel. However, he did

Court overruled that objection (Tr. 20–22), the State proceeded to lay the foundation for introducing the Eggleston transcript. A police officer, Sergeant Serra, testified that, upon investigation at the State's request, he had ascertained that Eggleston was in the Armed Services, was then currently stationed at Fort Sill, Oklahoma, and his address at that military post was known (Tr. 22–23). After defense counsel's renewed objection was overruled by the Court (Tr. 24–25),[3] the court reporter who had transcribed Eggelston's testimony at the first trial read the entire direct and cross-examination of Eggelston at that first trial into the record (Tr. 33–44). At the close of the State's case, Britton's counsel once more renewed his previous objections and moved for a judgment of acquittal (Tr. 50–51). The Court denied the motion and rendered a verdict of guilty. In this petition for writ of habeas corpus, Britton asserts that the admission of the transcript into evidence violated his constitutional rights.

In Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), the Supreme Court held that the Sixth Amendment's guarantee of a defendant's right "to be confronted with the witnesses against him" is made applicable to the states through the Fourteenth Amendment. The Supreme Court emphasized that the right of confrontation includes as a major element the right of cross-examination. *Id.* at 404, 408, 85 S.Ct. 1065. Under the facts in *Pointer,* it was clear that the defendant had been deprived of any meaningful opportunity to cross-examine the principal witness against him. That witness, the victim of the alleged crime, identified the defendant as one of the felons at a preliminary hearing at which the defendant was present but was not represented by counsel. Upon learning that that witness had left the state with no intention to return, the prosecution introduced into evidence at the trial the transcript of the witness's testimony at the preliminary hearing. The Supreme Court held that the conviction must be set aside, saying:

> \* \* \* [A] major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him. \* \* \* Because the transcript of [the witness'] statement offered against petitioner at his trial had not been taken at a time and under circumstances affording petitioner through counsel an adequate opportunity to cross-examine [the witness], its introduction in a federal court in a criminal case against [petitioner] would have amounted to a denial of the privilege of confrontation guaranteed by the Sixth Amendment. Since we hold that the right of an accused to be confronted with the witnesses against him must be determined by the same standards whether the

---

originally contend that since Eggelston was in Vietnam, the State could arrange to locate Eggelston and have him returned to Baltimore to testify (Tr. 14–16). In addition, he specifically argued that the introduction of Eggelston's transcript would foreclose the opportunity to cross-examine Eggelston (Tr. 12, 20). Moreover, he referred to Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) as "almost directly on point" (Tr. 16). Finally, the trial judge's statements show that he understood that the gravamen of the defense's objections was the right of confrontation (Tr. 20). The Court rejected that argument "because at the original hearing the testimony of this witness was subject to cross-examination" (Tr. 20). It is therefore clear that Britton did not waive during the second trial his federal right to be confronted with the witnesses against him. Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *compare* Poole v. Fitzharris, 396 F.2d 544 (9th Cir. 1968).

3. Counsel, in renewing his motion, referred to the fact that Eggelston was now "in Oklahoma. This is a lot closer than Vietnam, which I was told a week ago. Now it turns out that he is in Oklahoma" (Tr. 24–25). And later (Tr. 51) counsel again called attention to the fact that Eggelston was not in Vietnam, but in Oklahoma.

right is denied in a federal or state proceeding, it follows that use of the transcript to convict petitioner denied him a constitutional right, and that his conviction must be reversed. [*Id.* at 407–408, 85 S.Ct. at 1069].

The import of the Supreme Court's decision in *Pointer* is that certain state rules governing the admissability of hearsay statements run afoul, under the circumstances of a given case, of the constitutional right of confrontation. The Court emphasized that it was not broadly striking down recognized exceptions to the hearsay rule; rather, the standard in each case is whether the application of such a rule in that case deprived the accused of his right of confrontation. Thus, the Court said:

> This Court has recognized the admissability of dying declarations, * * * and of testimony of a deceased witness who has testified at a former trial. * * * Nothing we hold here is contrary. *The case before us would be quite a different one had [the witness'] statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine.* * * * There are other analogous situations which might not fall within the scope of the constitutional rule requiring confrontation of witnesses. [*Id.* at 407, 85 S.Ct. at 1069; citations omitted; emphasis supplied].

The contours of the effect of the right of confrontation on the application of state exceptions to the hearsay rule were further delineated in Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), in which the Supreme Court stated that the question before it was:

> " * * * whether petitioner was deprived of his Sixth and Fourteenth Amendment right to be confronted with the witnesses against him at his trial in Oklahoma for armed robbery, at which the principal evidence against him consisted of the reading of a tran-

script of the preliminary hearing testimony of a witness who at the time of trial was incarcerated in a federal prison in Texas." [*Id.* at 720, 88 S.Ct. at 1319].

In *Pointer*, the defendant was not represented at the preliminary hearing. In *Barber*, on the other hand, the accused was represented by counsel at the preliminary hearing. There was, therefore, in *Barber* an opportunity for cross-examination, although in fact defense counsel did not take advantage of it.

The State of Oklahoma, in *Barber*, pointed out that it had operated at the trial under a generally recognized exception to the hearsay rule in that the absent witness was "unavailable" at the time of trial because he was outside the jurisdiction of Oklahoma. While conceding that there were techniques available which could have procured his attendance if the federal authorities had cooperated with the Oklahoma officials, the State contended that it had no power to *compel* the production of the witness. From that premise, the State concluded that it was under no obligation to undertake any efforts to attain that end. The Supreme Court, rejecting the argument, commented:

> Whatever may have been the accuracy of that theory at one time, it is clear that increased cooperation between the States themselves and between the States and the Federal Government have largely deprived it of any continuing validity in the criminal law. [*Id.* at 723, 88 S.Ct. at 1321; footnote omitted].

The Supreme Court then pointed out some of the means by which the State could have attempted to obtain the witness' presence and held that the State had a duty to make a good faith effort to produce the witness at the trial.

The Supreme Court held in *Barber* that the admission into evidence of the transcript of the preliminary hearing *without a good faith effort* to secure the

witness' attendance denied the defendant his right of confrontation. It is important to note that the Court did not generally proscribe the use of transcripts of testimony at preliminary hearings in which the accused was represented by counsel and the witness was "unavailable" at the trial. Instead, the Court said that for the purposes of the confrontation clause of the Sixth Amendment, "a witness is not 'unavailable' * * * unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Id.* at 724–725, 88 S.Ct. at 1322.

The State of Oklahoma also argued in *Barber* that the petitioner had waived his right of confrontation at trial because his counsel had not cross-examined the witness at the preliminary hearing. The Supreme Court, in rejecting that approach, wrote:

> * * * That contention is untenable. Not only was petitioner unaware that [the witness] would be in a federal prison at the time of his trial, but he was also unaware that, even assuming [the witness'] incarceration, the State would make no effort to produce [the witness] at trial. To suggest that failure to cross-examine in such circumstances constitutes a waiver of the right of confrontation at a subsequent trial hardly comports with this Court's definition of a waiver as "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938); Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).
>
> Moreover, we would reach the same result on the facts of this case had petitioner's counsel actually cross-examined [the witness] at the preliminary hearing. * * * The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the

witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial. While there may be some justification for holding that the opportunity for cross-examination of testimony at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable, this is not, as we have pointed out, such a case. [*Id.* at 725–726, 88 S.Ct. at 1322; citation and footnote omitted].

The Supreme Court has directed that its decision in Barber v. Page shall be applied retroactively. Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L. Ed.2d 508 (1969).

In the present case, the State of Maryland limited its investigation to ascertaining Eggelston's whereabouts. Once having determined that he was outside Maryland, the prosecution made no effort to secure his attendance (Tr. 22–23). However, whereas in Barber v. Page the testimony introduced into evidence had been taken in a preliminary hearing, here it was taken in a full-fledged trial. Britton's lawyer at his first trial did in fact avail himself of the opportunity to cross-examine Eggelston over the full range of the issues involved in the case. Thus, Britton was not denied his right at trial to probe Eggelston's recollection and to expose any inconsistencies or falsehoods in Eggelston's testimony. The introduction, therefore, in the second trial of the transcript of Eggelston's testimony at the first trial did not deny Britton his right of cross-examination.

However, as the Supreme Court emphasized in *Barber,* the right of confrontation serves an additional function wholly apart from the benefits that may be obtained from cross-examination. It also enables the trier of fact to view the demeanor of the witness and thereby to

assess the credibility of his testimony. In *Barber,* the Supreme Court quoted as follows from Mattox v. United States, 156 U.S. 237, 242–243, 15 S.Ct. 337, 39 L.Ed. 409 (1895):

> The primary object of the [Confrontation Clause of the Sixth Amendment] * * * was to prevent depositions or ex parte affidavits * * being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. [390 U.S. at 721, 88 S.Ct. at 1320].

This was reiterated by the Court in Berger v. California, *supra,* when it held *Barber* retroactive:

> As we pointed out in Barber v. Page, one of the important objects of the right of confrontation was to guarantee that the fact-finder had an adequate opportunity to assess the credibility of witnesses. [393 U.S. at 315, 89 S.Ct. at 541].

It is often, if not always, impossible to guage precisely the importance of an intangible quality like demeanor in any given case. When the testimony of a particular witness supplies only a minor link in the prosecution's case and there is no reason on the surface to doubt that witness' veracity and his ability to observe and remember, then the relative weight to be attached to his demeanor may be only minor and the importance of the credibility factor may be diminished. On the other hand, when the witness' testimony forms a substantial part of the incriminating evidence, or when there is substantial doubt as to his capacity to observe and remember, then observations by the trier of fact of the demeanor and credibility of that witness may well tip the scales in the case. It is the latter situation which is present here. Eggelston's testimony was the *only* incriminating evidence offered against Britton. Further, at the time of the first trial, Eggelston was but fifteen years old. Because of the joint presence of those two factors, the risk of harm in using a printed transcript of Eggelston's testimony is magnified.

In United States v. Levi, 405 F.2d 380 (4th Cir. 1968), Judge Craven recently observed: "That guilt or innocence may sometimes turn upon the credibility of one witness has always been of concern to society because of the possibility of error or false swearing." For this reason the courts have fashioned safeguards surrounding the use in criminal cases of a single witness' testimony. In the *Levi* case, the Fourth Circuit held that the trial judge has an obligation to determine for himself, from his own observations of the witness, that the testimony is sufficiently reliable to send the case to the jury. The Court's language is very illustrative of the sensitivity with which a single witness' testimony is viewed:

> We adhere to the common law one-witness rule. We think that such a rule permits, but does not require, the trial judge to submit a criminal case to the jury wherein the finding of guilt must rest exclusively upon positive identification testimony of one witness uncorroborated by other circumstances. We hold that in this circuit a district judge has the power to refuse to permit a criminal case to go to the jury even though the single eye witness testifies in positive terms as to identity, and that he should so refuse unless he is himself persuaded by the demeanor, appearance and degree of apparent certainty of the witness, and by other factors affecting the integrity of the identification, that in all probability it is correct. In deciding whether to permit a criminal case to go to the jury, where identification rests upon the testimony of one witness, the dis-

trict judge ought to consider with respect to identification testimony the lapse of time between the occurrence of the crime and the first confrontation, the opportunity during the crime to identify as compared with the opportunity of other witnesses who may be unable to do so, the reasons, if any, for failure to conduct a line-up or use similar techniques short of line-up, and the district judge's own appraisal of the capacity of the identifying witness to observe and remember facial and other features. In short, the district judge should concern himself as to whether the totality of circumstances "give[s] rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). See Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L. Ed.2d 1267 (1968). Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967). [*Id.* at 383; footnote omitted].[4]

Against the clear and definite risk of harm to Britton in not being able to confront Eggelston at his second trial, there stands in sharp contrast the relatively slight burden on the State to make a good faith effort to obtain Eggelston's presence by asking the Army to cooperate in transporting him to Maryland for the trial. The record in this case discloses no legitimate interest or reason which mitigated against the State of Maryland so proceeding. "The right of confrontation may not be dispensed with so lightly." Barber v. Page, *supra,* 390 U.S. at 725, 88 S.C. at 1322.

■ This Court does not hereby hold that the transcripts of testimony in a prior trial may never be admitted into evidence at a subsequent trial; certainly Barber v. Page does not go so far. This Court holds only that under the circumstances of this case—in which the incriminating evidence of the State consisted of the testimony of one young boy and in which the other witness could make no identification—the State was required to make a good faith effort to secure his presence as a prerequisite to its using a transcript of his testimony as evidence. Its failure to make that good faith effort denied Britton his right of confrontation.

In so concluding, this Court is not unmindful of the Supreme Court's admonition in *Pointer* that the use of testimony presented at a preliminary hearing is "quite different" from the use of the earlier testimony elicited "at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine." 380 U.S. at 407, 85 S.Ct. at 1069; quoted more fully, *supra.* But in this case, Britton's *Schowgurow* right to be reindicted and tried a second time is surely an empty one if upon retrial the State makes no effort to produce the key witness against him and the trial judge at the second trial adopts the determinations of the trial judge at the first trial concerning the credibility of the key witness and the reliability of the latter's identification testimony. Whether the requirements of *Pointer* and *Barber* are to be applied as sharply in every case in which the fact-finder is a judge sitting without a jury, rather than a jury, is a question which this Court need not reach herein. Nothing in *Pointer* and *Barber* or in any other case which has come to this Court's at-

---

4. Maryland also follows the common-law rule that a single witness' testimony, if believed, is sufficient to support a conviction. This Court has found no case in which the Court of Appeals of Maryland or the Court of Special Appeals of Maryland has had occasion to consider what prophylatic rules, if any, are necessary in jury trials because in each of the cases which have arisen the court itself was the trier of fact. *See, e.g.,* Bailey v. State, 226 Md. 353, 173 A.2d 732 (1961); Booth v. State, 225 Md. 71, 169 A.2d 388 (1960); Brown v. State, 222 Md. 312, 160 A.2d 95 (1960); Hutchinson v. State, 1 Md.App. 362, 367, 230 A.2d 352 (1967).

tention makes that distinction. But even if this Court affords, as it does, and as did the second trial judge, every respect to the determinations of the first trial judge concerning Eggleston's credibility and the reliability of his recollections and identification, the second trial becomes a mere replay of the first trial—and not the new trial afforded by *Schowgurow*— if the second trial fact-finder relies on the first trial fact-finder's determinations on the most important and indeed the controlling factual elements in the case. The teachings of *Pointer, Barber* and *Schowgurow,* when considered together, thus combine to require this Court to grant Britton's within petition for federal habeas corpus relief.

## II.

■ Britton's other independent grounds for the relief he seeks are without merit. First, Britton contends that his arrest was without a warrant and, therefore, illegal. It is true that the State did not introduce any evidence to show that the arrest was legal, but neither was any evidence resulting from the arrest or any "fruits" of the arrest admitted at the trial. The mere illegality of an arrest, standing alone, does not render a conviction in a state court void under any federal standard.

■ Britton also asserts that the trial court committed prejudicial error when it allowed certain witnesses to testify at the trial. This apparently refers to an alleged violation of an understanding between Britton's counsel and the prosecuting attorney that an order requiring sequestration of a prospective witness was not necessary because the State did not intend to call him. In fact, that witness—Sergeant Serra—was called and allowed to testify. However, as the Court of Special Appeals pointed out, the testimony of that police officer did not go to the merits of the case and was pre-

sented solely for the purposes of laying the foundation for the introduction at the second trial of the transcript of Eggelston's testimony at the first trial and in order to establish that Britton had been arrested. The Court of Special Appeals said:

> The matter in question rests within "the sound discretion of the trial judge as to whether or not to admit the testimony of a witness even where there has been a violation of the exclusion order", Mayson v. State, 238 Md. 283, 208 A.2d 599. We see no abuse of discretion here. [Britton v. State, *supra,* 2 Md.App. at 290–291, 234 A.2d at 278].

Clearly, no federal question is raised by this line of approach.

■ Finally, Britton contends that the evidence at trial was legally insufficient to convict him. This issue turns on the admissibility of the Eggelston transcript. Without that transcript, the record is clearly "so devoid of evidence of guilt as to offend the constitutional standard to be applied in a collateral proceeding." Stevens v. Warden, Md. Penitentiary, 382 F.2d 429, 430 (4th Cir. 1967). On the other hand, if this Court's holding in Part I of this opinion is erroneous, then the evidence at Britton's second trial passes muster under that constitutional test. Under federal as well as Maryland standards, the identification of the accused as the perpetrator of the crime by a single eyewitness, if believed by the trier of fact, is sufficient evidence to support the conviction. United States v. Levi, *supra;* cases cited in n. 4, *supra.*

For the reasons stated hereinabove in Part I of this opinion, it follows that the writ Britton seeks must be granted and Britton must be released unless the State elects to retry him and does so within a reasonable time. An order so providing will be filed in this case.[5]

5. After this opinion was filed, the Attorney General of Maryland notified this Court that the State was not going to file an appeal and would retry the petitioner in a trial which will start no later than

August 24, 1969. This Court thereupon filed an Order requiring respondent to release petitioner unless his retrial commences before August 24, 1969.