**UNITED STATES of America,
Appellee,
v.**

**Ell JOHNSON, Jr., alias "Butch" alias
John Doe, Defendant, Appellant.**

No. 7227.

United States Court of Appeals
First Circuit.

July 8, 1969.

Andrew A. Bucci, Providence, R. I., by appointment of the Court, for appellant.

William J. Gearon, Asst. U. S. Atty., with whom Edward P. Gallogly, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Defendant was convicted and sentenced on a two count indictment charging him with violations of the narcotic laws.[1]  The principal issue on this appeal involves the identification of the defendant.

The government's case was as follows. About 11:25 p. m. on October 31, 1967, after a conference with other law enforcement officials and a confidential in-

---

1. Count I charged an unlawful sale of narcotics in violation of 26 U.S.C. § 4705(a) and Count II charged the sale of a nar-

cotic drug, knowing the same to have been unlawfully imported into the United States under 21 U.S.C. § 174.

formant, agent Cooper of the Federal Narcotics Bureau, and the informant went to an address in the City of Providence. Their purpose was to purchase narcotics from an individual known as "Butch". Cooper testified that he and the informant walked up to the door, looked through a window and observed the defendant sleeping on a couch inside. They rapped on the window to awaken him, after which defendant came to the door and admitted them to a vestibule. The informant introduced Cooper to the defendant as a prospective purchaser. Then followed about five minutes of conversation between the defendant and the informant and between the defendant and Cooper during which time Cooper paid the defendant $40 for two bags of a substance, later identified as heroin. After making the "buy" Cooper and the informant left the premises and rejoined the above mentioned officers at a prearranged location. They immediately tested the purchased substance to determine whether it was a narcotic. At or about the same time Cooper was shown several photographs from which he identified a picture of the defendant.

At the trial Cooper positively identified the defendant as the person from whom he had purchased the narcotics on the night of October 31, 1967. The question of identity was placed in issue after it appeared in evidence that the defendant's brother, instead of the defendant, had first been mistakenly arrested by the police for the October 31 offense. The court allowed the government to meet the identity issue by questioning agent Cooper as to the identification by photograph. He testified that the person shown in the photograph that he selected was indeed the individual from whom he had bought the narcotics. On cross-examination, however, Cooper recalled that the confidential informant was also present when he made the photographic identification. He did not say nor did he deny that it was the informant who suggested to him that the photograph of the defendant was that of the person from whom he had purchased

the narcotics. Nor could he remember whether there were other individuals among the pictures shown to him who resembled the defendant. The informant did not testify. It is Cooper's testimony that gives rise to the principal issue in this appeal.

The Supreme Court has recognized the danger that a witness exposed to an extrajudicial photographic identification will retain in his mind's eye the image shown in the photograph rather than that of the defendant himself. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). To reduce the likelihood of misidentification the Court has formulated a two-step analysis to be applied in cases of this nature. We must first determine from the totality of the surrounding circumstances whether the "photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons, *supra* at 384, 88 S.Ct. at 971; Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L. Ed.2d 1199 (1967). If the identification is not shown to violate due process by this standard, the conviction must be affirmed. However, if the pretrial identification procedure is found to violate due process, before a new trial is granted, the government should have the opportunity to "establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the [photographic] identification." United States v. Wade, 388 U.S. 218, 240, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149 (1967). See Wright v. United States, 404 F.2d 1256 (D.C.Cir.1968).

Applying this analysis to the instant case the photographic identification certainly had the potential for creating a "very substantial likelihood of irreparable misidentification." The only testimony elicited, however, was that of agent Cooper who simply could not remember exactly what transpired when the photographs were shown to him. The facts concerning the identification

were not brought out until late in the trial, after the government's witnesses had already taken the stand. These witnesses, who had been present when the photographs were shown, were not recalled to testify as to the number or the contents of the photographs, or whether the informant suggested the defendant's picture to Cooper. Nor was any evidence produced as to why it was necessary to hold an immediate photographic identification, or whether it was feasible to hold a lineup. Simmons v. United States, *supra;* Wright v. United States, *supra.*

Although in a proper case we would remand for a hearing to develop the totality of the circumstances, see *Wright, supra,* here we think such a step is unnecessary. Even assuming a violation of due process, we are satisfied that the record shows by clear and convincing evidence that agent Cooper's in-court identification was "based upon observations of the suspect other than the [photographic] identification." United States v. Wade, *supra* at 240, of 388 U. S., at 1939 of 87 S.Ct.; Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

Agent Cooper had the opportunity to observe the man from whom he purchased the narcotics for approximately five minutes. He testified that although the vestibule in which the transaction took place was itself unlighted, it was illuminated by light coming through an adjoining door. In fact he volunteered that it was light enough so that he could identify the color of the defendant's pants. Unlike a witness to a violent crime whose perceptions may be suspect because of the extreme anxiety of the moment, the agent here was under no extraordinary pressures that would distort his observations. Nor is this a case where a witness catches only a fleeting glimpse of a criminal, and is then presented with a photograph that takes on an independent significance of its own.

Agent Cooper further testified that within two days of the "buy" he again saw the defendant in Berry's Cafe. Although this was also subsequent to his seeing the photographs, he stated on cross-examination, "I recognized him in Berry's as having been the 'Butch' that sold me the narcotics." Moreover on no less than five occasions during the trial Cooper identified the defendant sitting in the courtroom as the man who had sold him the narcotics.

The government, late in the trial, attempted to have Cooper tie up his in-court identification with the photographic identification. This question was disallowed by the court. We are satisfied that the attempted use of the extrajudicial identification was "harmless beyond a reasonable doubt." Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) and Gilbert v. California, 388 U.S. 263, 274, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) quoting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Although the defense attempted to show that the defendant and his brother so closely resembled one another that the police in fact arrested the wrong man, the brother took the stand affording the jury ample opportunity to observe both of them. Furthermore, we note that agent Cooper was not among the officers who went to arrest the defendant.

In light of the totality of the circumstances, we are satisfied that on the issue of identification the record establishes a recollection independent of the impermissible suggestions which may have tainted agent Cooper's extrajudicial identification of the defendant.[2] See Commonwealth v. Robinson, 1969 Mass. Adv.Sheets 583, 246 N.E.2d 669.

2. Defendant raises the argument that since the pretrial identification was made by the informant who was not produced at trial, he was thereby deprived of his right of cross-examination. Only if the in-court identification depended on the photograph would this have merit. Our discussion above shows that it did not.

Defendant next argues that the trial court failed to properly instruct the jury that evidence of defendant's prior convictions should be considered only in connection with defendant's credibility. Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965). The instruction was as follows:

"Now the testimony of the witness may be discredited or impeached by showing that he had been convicted of a felony. Prior conviction does not render a witness incompetent to testify, it merely reflects on his credibility. It is the province of the jury to determine what weight, if any, should be given to such prior conviction as impeachment."

■ Defendant's argument is that the use of the word "witness" in the charge did not adequately inform the jury that it was the defendant's testimony that had been impeached. But it was perfectly apparent to whom the court was referring. Immediately preceding the part of the charge in question, the court instructed the jury: "[Y]ou may determine which of the witnesses are the more worthy of belief, and in this case, the defendant took the stand and there was introduced evidence of prior convictions." Nor did the court abuse its discretion in admitting this evidence. Luck v. United States, *supra*.

■ Finally defendant argues that the government's case, predicated largely on the testimony of a single law enforcement officer, should not have been submitted to the jury. See United States v. Levi, 405 F.2d 380 (4th Cir. 1968). Although at the conclusion of all the evidence defendant made a motion for judgment of acquittal, the single witness question was not raised. In fact the motion was withdrawn, but in any event we find no error. The court in *Levi* held that the district judge may submit a single witness case to the jury if he finds from the totality of the circumstances that there was no substantial likelihood of misidentification. 405 F.2d

at 383. As our opinion points out, the district court was warranted in so finding in this case.

Affirmed.