Cleveland REED, Defendant Below,
Appellant,

v.

STATE of Delaware, Plaintiff Below,
Appellee.

Anthony HAWKINS, Defendant Below,
Appellant,

v.

STATE of Delaware, Plaintiff Below,
Appellee.

Supreme Court of Delaware.

April 15, 1971.

Bernard Balick, Asst. Public Defender, Wilmington, for Cleveland Reed, defendant below, appellant.

Stanley C. Lowicki, of O'Donnell, Hughes & Lowicki, Wilmington, for Anthony Hawkins, defendant below, appellant.

Francis Reardon, State Prosecutor, and John G. Mulford, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

In these appeals from robbery convictions, we are called upon to decide whether an accused in custody is entitled to the presence of counsel at a post-arrest identification by the victim of a photograph of the accused. We are also required to review the admissibility of certain evidence asserted to have been obtained by the police during, and as the result of, unlawful arrests and detentions.

I.

The defendants, Cleveland Reed and Anthony Hawkins, were tried and convicted together of the armed robbery of a merchant at about 5:00 p. m. The basic facts of the arrests and detentions of the defendants, the asserted illegality of which forms the foundation of these appeals, are substantially undisputed:

A few hours after the robbery, the police received a "tip" from an informer implicating the defendants in the offense. The police went to Reed's home immediately and arrested him upon the basis of the affidavit of a bank official, which the police had been holding on file, alleging a forgery by Reed. Hawkins, a brother-in-law of Reed, lived in the same house. He was arrested simultaneously in the back yard or driveway of the residence on a charge of hindering a police officer in the performance of his duties by falsifying his age in response to the officer's question.[1] He was 18 years old, but said that he was 16. The falsehood was discovered by the officer immediately from identification papers produced by Hawkins upon the officer's request. Neither of the arrests was supported by an arrest warrant.

---

1. Wilmington City Ordinance 105, § 3 provides:

    "Whoever shall knowingly furnish, give or make any false, misleading or unfounded report to a Police Officer which inter-feres with or hinders the proper operation of a Police Officer's duty or his investigation shall be guilty of a misdemeanor."

The defendants were brought to Police Central at about midnight. Questioning of Hawkins about the robbery was commenced immediately, following *Miranda* [2] type warnings. Within 30 minutes, Hawkins had confessed that he and Reed had committed the robbery. Reed refused to make any statement. After making the confession, Hawkins led the police along the escape route and to the places where evidence was hidden, including clothing worn by Hawkins during the commission of the crime, the hammer used by him in the assault on the victim, and some of the stolen money. By 2:00 a. m., both defendants had been charged and booked for the robbery on the bases of Hawkins' statements and disclosures. The next day, police photographs of the defendants were taken. About a week later, the victim identified the defendants from the photographs which were shown to the victim with photographs of others; neither the defendant nor counsel was present.

At the trial, Hawkins' statement was not introduced into evidence. The items of clothing and the hammer, disclosed to the police by Hawkins, were admitted in evidence; and the victim made an in-court identification of the defendants. The details of the photographic identification by the victim, including the photographs themselves, were introduced in evidence by the State. Hawkins appeals on the grounds of unlawful arrest, procurement of evidence during unlawful detention, and failure to give proper *Miranda* warnings. Reed appeals on the grounds (1) that the photographs were taken during a period of unlawful detention; (2) that the photographs were identified by the victim in the absence of counsel, in violation of the defendant's Sixth Amendment rights, thereby tainting the evidence of the out-of-court identification proceeding and the in-court identification; and (3) that he was entitled to a separate trial.

II.

As to Hawkins:

■ We hold that Hawkins was lawfully arrested and detained under the City Ordinance. A police officer is hindered in the performance of his duty and in the conduct of an investigation when a suspect of 18 years of age lies and gives his age as 16. Under our law, a 16 year old offender is a juvenile delinquent subject to the processes and procedures of the Family Court, whereas an 18 year old offender is subject as an adult to the ordinary processes of the administration of criminal justice. A police officer's duties vary for each such situation, commencing with the arrest and the procedures to be followed immediately subsequent to the arrest. Since an arrest may be made without a warrant for a misdemeanor committed in the presence of an officer (11 Del.C. § 1906), the arrest here was lawful; the detention, therefore, was legal for the brief period during which Hawkins was interrogated. It follows that the evidence disclosed by Hawkins was not the impermissible fruit of an illegal detention. Compare Morales v. New York, 396 U.S. 102, 90 S.Ct. 291, 24 L.Ed.2d 299 (1969).

■ We hold, too, that the requirements of *Miranda* were met in this case. The defendant contends that the *Miranda* warnings, given him before his statement was taken by the police, were inadequate in that he was young and under the influence of alcoholic liquor, in that the warnings were too hurried and formalistic to be meaningful to him, and in that under all of the circumstances the midnight-police-station-situation produced an involuntary statement which poisoned any disclosures later made.

The testimony of the police officers and of Hawkins was heard by the Trial Judge. He observed their demeanor upon the witness stand; he found as a matter of fact

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

that the *Miranda* warnings were adequately given and that Hawkins' statement was voluntary.[3] We have reviewed the record and find no sufficient basis to differ with the Trial Judge in this phase of the case. Accordingly, his findings and conclusions in this regard will not be disturbed.

### III.

As to Reed:

■ We hold that the photographs were not taken during an unlawful detention. Reed was formally charged with the robbery at 2:00 a. m. Reed's detention thereafter, and during the following day when the photographs were taken, was a legal detention. Compare Vorhauer v. State, Del.Supr., 212 A.2d 886 (1965); Webster v. State, Del.Supr., 213 A.2d 298 (1965); and Morales v. New York, 396 U.S. 102, 90 S.Ct. 291, 24 L.Ed.2d 299 (1969).

■ Reed also contends that he was entitled to the presence of counsel when the victim identified him from the photographs; that, as a consequence, both the evidence of the photographic identification and the in-court identification were inadmissible. Reed relies upon United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) in which it was held that a suspect or accused had a Sixth Amendment right to counsel at a post-indictment police line-up in which he appeared, if a subsequent in-court identification, influenced by that line-up, is to be admitted in evidence.

We decline to extend the *Wade* rule to the examination by the victim of photographs of the accused and an out-of-court identification therefrom in the absence of the accused, as in the instant case. Under the growing weight of authority, there is no constitutional right to counsel at a post-arrest showing of photographs at which the defendant is not present; it being held that such photographic identification proceeding is not such "confrontation" or "exhibition" of the accused vis a vis the witness as to come within the rule of *Wade* and the related cases of Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). See People v. Lawrence, 4 Cal.3d 273, 93 Cal.Rptr. 204, 481 P.2d 212 (1971); People v. Martin, 47 Ill.2d 331, 265 N.E. 2d 685 (1970).

We recognize that in some jurisdictions, including our own Third Circuit Court of Appeals, it has been held that there is no substantial difference between a line-up of photographs of persons in custody and a line-up of the persons themselves, insofar as the constitutional safeguards required by *Wade* are concerned; that, otherwise, the line-up requirements of *Wade* are subject to easy evasion. See United States

---

3. In this connection, the Trial Judge stated the following findings and conclusions:
" * * * Mr. Hawkins was advised of his constitutional rights, and I don't conclude that that advice was given by rote. As a matter of fact, the officer involved presented evidence that it was explained to him verbally and that the individual indicated his understanding of it and the background for that understanding including high school graduation and that he then read to him the rights from a form, read them himself, signed them. I think at this point it might be appropriate for the Court to comment that Defendant Hawkins' testimony as to his condition that night, his lack of understanding is unacceptable to the Court. It does not jibe with the facts of the situation. A young man like this having consumed a fifth of scotch as he testified would hardly have followed the course of action that he did thereafter. His memory is acute in some instances and blank in others. I have no reason to believe that the police officer who did testify is testifying to anything but a reasonably accurate version of what actually occurred. It is the conclusion of the Court, therefore, that * * * there was a proper and adequate explanation of constitutional rights to the Defendant Hawkins; and that thereafter he voluntarily and knowingly made certain statements and gave certain information to the police officers which led to further disclosures. I'm satisfied of these things beyond a reasonable doubt. * * *."

v. Zeiler (3 Cir.) 427 F.2d 1305 (1970)[4]; Commonwealth v. Whiting, 439 Pa. 205, 266 A.2d 738 (1970); United States v. Marson (4 Cir.) 408 F.2d 644 (1968); Thompson v. Nevada, 85 Nev. 134, 451 P.2d 704 (1969). We prefer, however, the reasoning of the more recent decisions of the Supreme Courts of California and Illinois in *Lawrence* and *Martin, supra,* and of United States v. Ballard (5 Cir.) 423 F.2d 127 (1970); United States v. Robinson (7 Cir.) 406 F.2d 64 (1969); McGee v. United States (10 Cir.) 402 F.2d 434 (1968), cert. den. 394 U.S. 908, 89 S.Ct. 1020, 22 L.Ed.2d 220 (1969); and United States v. Bennett (2 Cir.) 409 F.2d 888, cert. den. Haywood v. United States, 396 U S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1969), wherein Judge Friendly stated:

> " * * * to require that defense counsel be allowed or appointed to attended out-of-court proceedings where the defendant himself is not present would press the Sixth Amendment beyond any previous boundary. None of the classical analyses of the assistance to be given [an accused] suggests that counsel must be present when the prosecution is interrogating witnesses in the defendant's absence even when, as here, the defendant is under arrest; counsel is rather to be provided to prevent the defendant himself from falling into traps devised by lawyers on the other side and to see to it that all available defenses are proffered * * *."

We agree with the rationale of the latter line of cases and conclude that a photographic identification proceeding, unattended by the defendant, is not such "confrontation" or "exhibition" as to come within the rule of the *Wade* case. In *Wade, Gilbert,* and *Stovall,* the police exhibited the accused to witnesses in person. At such corporeal exhibitions, the accused may be required to move about, speak, wear certain clothes, or do other

things that may incriminate him. Not so at a photographic identification proceeding unattended by the accused. The rule of the *Wade* case, in our opinion, does not encompass identifications made in the absence of the accused. We decline to extend it that far.

█ We recognize, of course, that the possibility of unfairness exists in photographic identifications as well as in corporeal identifications. However, as was stated in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 "the danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." For this purpose, it is important that the photographs from which the witness made the out-of-court identification be preserved and made available to defense counsel at trial so that the possibility of prejudice may be revealed and the out-of-court identification may be impugned. People v. Lawrence, 4 Cal.3d 273, 93 Cal.Rptr. 204, 481 P.2d 212 (1971).

Accordingly, we hold that Reed's Sixth Amendment rights were not violated by the absence of counsel at the out-of-court identification.

█ The determinative issue, then, is the due process question of whether, in the light of the totality of the circumstances, the photographic identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification", Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, (1968); or "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to violate due process, Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). See also Redden v. State, Del. Supr., 269 A.2d 227 (1970). In *Simmons,*

---

4. A distinction to be noted is that in *Zeiler,* the photographic identification proceeding was conducted shortly before an already-scheduled line-up but long after arrest and the appointment of counsel.

although the Court recognized the hazards of initial identification by photograph, it declined to prohibit the practice either in the exercise of its supervisory power or as a matter of constitutional right, holding that a conviction based on an eye-witness identification at trial, following a pretrial identification by photograph, will be set aside only if the photographic identification proceeding was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

Applying the *Simmons* rule to the totality of the circumstances in the instant case, we hold that the photographic identification proceeding was not impermissibly suggestive within that rule. The details of the out-of-court identification were presented in evidence by the State, and the fairness of the photographic identification was made subject to cross-examination by the defendant and consideration by the court and jury.[5] Ten photographs were shown to the victim, eight being photographs of others and two being photographs of the defendants. The evidence shows that, without aid or hesitation, the victim quickly identified the defendant's photographs as those of his assailants. The defendant contends that impermissible suggestion arose from the fact that his photograph and that of Hawkins bore the dates they were taken on the day after the offense, whereas the other photographs bore dates of earlier years. When queried on voir dire about the dates on the photographs, the victim testified: "I never gave it a thought, never bothered to look at that." He further testified: "As long as I am standing here and sworn on that Bible, I didn't see that. I didn't pay no attention to that." And to the statement "Of the batch given you, only two of them had a recent date on them", the victim testified: "I didn't know that at the time. I just found that out. That is the first time I am hearing or realizing it is put on that way. I didn't know that at the time. I didn't know until you pointed it out now."

Considering the totality of the circumstances of the photographic identification in the instant case, we are satisfied that the proceeding was not so impermissibly suggestive as to violate due process under the rule of the *Simmons* case.

We hold, therefore, that there was no error in the admission of the evidence of the out-of-court identification, and that there was no resultant taint upon the in-court identification, for either of the assigned constitutional reasons. Compare People v. Lawrence, *supra*.

In view of these conclusions, we do not reach the question of whether the in-court identification had an "independent origin"; i. e., whether the State established "by clear and convincing evidence" that the victim, in making the in-court identification, was not influenced by a prior improper confrontation. See United States v. Wade, 388 U.S. at 240, 242, 87 S.Ct. at 1939, 1940.

■ Finally, Reed contends that he was entitled to trial separately from Hawkins. No such application was made before or during the trial. Reed was represented throughout by able counsel. The idea comes too late. In this connection, we have considered the defendant's argument

5. The Trial Judge stated the following in this connection:
   " * * * the Court is not just satisfied but rather impressed with the testimony of the witness insofar as his identification is concerned in the use of the photographs. There are problems as there are in all identifications. The ones that counsel have referred to such as the injury to the victim and the possibility of dates that may have affected his thinking at the time he was first looking at the photographs and other points of fact are and do relate to the weight of that identification. Insofar as this Court is concerned, weighing that evidence in terms of this motion, I'm satisfied beyond a reasonable doubt that the identification from the photographs was proper and legal * * *."

that Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) requires a new trial. We find no merit in this contention.

* * *

Affirmed.