Richard D. TAYLOR, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Nov. 21, 1972.

Reargument Denied Dec. 7, 1972.

Bernard Balick, of Aerenson, Balick &
Balick, Wilmington, for defendant below,
appellant.

H. Murray Sawyer, Jr., Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before, WOLCOTT, C. J., and CAREY and HERRMANN, JJ.

HERRMANN, Justice:

This is an appeal from convictions of kidnapping and rape, in violation of 11 Del.C. § 623 and § 781. The defendant was sentenced to life imprisonment on each count.

I.

The victim testified as follows:

She was a student at Delaware State College. In January, at about 7:00 p. m. after dark, she was driving alone on Route 13 near Smyrna en route to her home in Wilmington. She noticed a motorist directly behind her repeatedly blinking his lights as though to signal her. Thinking the motorist wished to pass, she moved into another lane. The motorist continued to blink the lights and follow too closely, as though intending to force the victim off the road. The victim thought it was a police officer attempting to halt her, whereupon she stopped on the shoulder of the road. The victim's testimony at this point was as follows:

"So, I rolled down the window, to see if it was a State Trooper and I noticed it wasn't. It was a black guy, so I waited until he walked up to the car and I asked him what was the trouble? So, he asked me where I was going and I said, to Wilmington, you know, so then I felt a knife on my neck and he told me to move over and I tried to start the car, and I couldn't start it; and then he opened the door and got in. So, I went across the seat and got out on the other side of the car. So, he got out on the driver's side and I started running around the car like, I was waving my hands and crying and he was chasing me around the car. So, he told me if I

didn't shut up, he was going to kill me. So, I kept running back and forth, and he kept chasing me around. I tried to get across the street, but there was so many trucks and cars coming, I couldn't get out of their way so—

"Q. You were running around the car and screaming and nobody stopped to help you?

"A. No.

"Q. Okay, go ahead.

"A. So, he told me if I didn't shut up, he was going to really hurt me. He would kill me. So, he grabbed me and forced me into the car and then he got in and he drove off down the road.

\* \* \* \* \* \*

"Q. Very well. What happened next?

"A. He drove down to the deserted house and he pulled off to the right and went up and in the back of the house, and turned right alongside of the house, then he started, I sat there and then he said, you know what I want, and the sooner we get it over with the sooner you can go, get away. So, I kept asking him to leave me alone and he kept on, so then he had laid the knife down and I tried to get out, and he pushed me back and grabbed the knife, and then he told me to come on, and then he started tugging at my pants and he was tugging and he pushed me back across the seat."

The victim then testified that "he kept holding the knife over me and he raped me"; that he then pushed her from the automobile and left her on the road; that the entire incident took about 15 minutes. Soon after the event, live sperm was found in the victim's vaginal tract.

The victim made several pre-trial photographic identifications and an in-court identification of the defendant as the man involved. The defense was mistaken identification and alibi.

## II.

The defendant contends that there was insufficient identification to justify submission of the case to the jury; that, therefore, the Trial Court erred in denying the defendant's motion for judgment of acquittal on that ground.

The victim's in-court identification was positive and convincing:

On direct examination she testified:

"Q. Do you see the person that kidnapped you and raped you that night?

"A. Yes, I do.

"Q. And where is he?

"A. Sitting over there (pointing to defendant at defense table).

"Q. This man here (pointing)?

"A. Yes.

"Q. Are you sure of that?

"A. Yes, I'm sure."

On cross-examination she testified:

"Q. I want you to look at Richard D. Taylor very closely. Are you positive that this is the man?

"A. Yes, I'm positive that he is the one."

On redirect examination she testified:

"Q. Is there any doubt in your mind whatsoever, any doubt whatsoever as to who the man was that did these things to you?

"A. There is no doubt, he was right over me in the car, and I couldn't forget his face."

The defendant made various attacks upon the in-court identification: (1) that the victim had a limited opportunity to see her attacker; (2) that a "considerable" period of time elapsed between the crime and the victim's positive identification of the defendant; (3) that there were "serious discrepancies" between the victim's original description of her attacker and the actual appearance of the defendant. By these contentions, the defendant sought, and now seeks, to raise "serious doubt" about the accuracy of the victim's identification of the defendant.

■ The defendant ultimately acknowledged that the issue of identification was a jury question in this case; that, in the final analysis, the jury believed the victim and disbelieved the defendant. But the defendant urges us to improve our practice and procedure so as to create further safeguards against the dangers of mistaken identification, citing United States v. Wade, 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967); Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); Wall, Eye-Witness Identification in Criminal Cases; United States v. Telfaire, D.C.Cir., 469 F.2d 552 (1972); United States v. Levi, 4 Cir., 405 F.2d 380 (1968); see also Commonwealth v. Whiting, 439 Pa. 205, 266 A.2d 738 (1970).

We recognize that the dangers of mistaken identity are great and that justice requires as many safeguards as may be feasible; that, in a proper case, the improvements being made in this field in other jurisdictions may be worthy of careful consideration. But this is not the case for making new law in this area. The identification in this case was made upon the basis of a 15 minute encounter at very close proximity on a lighted main thoroughfare and in the victim's automobile. The defendant's face was uncovered throughout. The in-court identification was strong and unequivocal. We find no need in this case for new safeguards against mistaken identification.

There was no error in the Trial Court's denial of the motion for judgment of acquittal.

## III.

The State introduced evidence of pre-arrest photographic identifications of the de-

fendant by the victim. The defendant bases several grounds of appeal thereupon.

## A.

The defendant contends that he was induced to waive his "constitutional right" to a *"Wade* voir dire" by the State's agreement not to introduce evidence of pre-trial photographic identifications; that, nevertheless, the State was permitted to introduce such evidence in rebuttal over the defendant's objection; that, by reason thereof, the defendant was deprived of due process.

The reference is to United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). That case held "that a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth [and Fourteenth] Amendment right to counsel and calls in question the admissibility at trial of the in-court identifications of the accused by witnesses who attended the lineup." Gilbert v. California, 388 U.S. 263, 272, 87 S.Ct. 1951, 1956, 18 L.Ed.2d 1178 (1967).

■ The *Wade* rule is not applicable to a photographic identification in this jurisdiction. Reed v. State, Del.Supr., 281 A.2d 142 (1971); United States ex rel. Reed v. Anderson, 3rd Cir., 461 F.2d 739 (1972). Moreover, the *Wade* rule is not applicable to identifications made prior to the initiation of judicial criminal proceedings. Kirby v. Illinois, 406 U.S. 682, 92 S. Ct. 1877, 32 L.Ed.2d 411 (1972). Here, all pre-trial identifications took place long prior to the arrest of the defendant and the institution of these charges against him.

■ Accordingly, we find no merit in the defendant's *"Wade* voir dire" argument. He waived no constitutional right and had none violated by reason of the State's change of trial plan.

■ Although not raised by the defendant, we have applied to the pre-trial photographic identifications in this case the due process tests of Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967): whether in the light of the totality of the circumstances, the photographic identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable mistaken identification", or "so unnecessarily suggestive and conducive to irreparable identification" as to violate due process. See Reed v. State, Del.Supr., 281 A.2d 142, 146 (1971). We do not find those tests violated here.

## B.

■ The defendant contends that, as a general rule, evidence of pre-trial photographic identification should not be admitted, citing Annotation, 71 A.L.R.2d 449 and Wall, Eye-Witness Identification in Criminal Cases.

There is no such general rule. It is held that the admissibility of pre-trial photographic identification depends upon the facts and circumstances of each case where, as here, the identifier has testified or is present and available for cross-examination, and the pre-trial identification is offered in corroboration of the testimony of the identifying witness at trial. There was no error here in this connection.

## C.

■ The defendant contends that it was error to admit evidence of the pre-trial photographic identification through a police witness rather than through the identifier. No authority is cited to support this novel argument. It has no merit. Dorsey v. State, 9 Md.App. 80, 262 A.2d 591 (1970); State v. Lancaster, 25 Ohio St.2d 83, 267 N.E.2d 291 (1971); Willis v. State, Fla.Supr., 217 So.2d 106 (1968).

#### D.

The defendant contends that evidence of the pre-trial identification was not admissible in rebuttal.

 The order of proof lies within the discretion of the Trial Court. Gaston v. State, Del.Supr., 234 A.2d 324 (1967); Herhal v. State, Del.Supr., 283 A.2d 482 (1971). There was no abuse of discretion in this connection.

#### IV.

Finally, the defendant contends that it was error to admit as rebuttal evidence the defendant's work record for periods not directly related to the date of the crime.

This argument, too, is unmeritorious. The rebuttal evidence was admitted in contradiction of the defendant's testimony. There was no abuse of discretion. Gaston v. State, Del.Supr., 234 A.2d 324 (1967).

The judgment below is affirmed.