**Lynn Osburne SLAYDEN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 25030.

United States Court of Appeals
Fifth Circuit.

Aug. 21, 1969.

Steve G. Condos, Dallas, Tex., for appellant.

B. H. Timmins, Jr., Asst. U. S. Atty., Dallas, Tex., for appellee.

Before THORNBERRY and SIMPSON, Circuit Judges, and ATKINS, District Judge.

SIMPSON, Circuit Judge:

The appellant, Lynn Osburne Slayden, was charged in a one-count indictment with a violation of Title 18, U.S.C. § 2314, in that on or about the 20th day of June, 1966, with unlawful and fraudulent intent he transported and caused to be transported in interstate commerce from Dallas, Texas, to New York, New York, a falsely made and forged security, and American Express Company money order No. DA 700 444 538, then knowing the same to be falsely made and forged. Tried by a jury, Slayden was found guilty and received a sentence of five years. On this appeal he urges that there was error in the identification of a government exhibit, that there was improper admission in evidence of two money orders, and that his conviction cannot stand because it "was based on the ruling of an inference of knowledge of forgery upon the ruling of an inference of knowledge that the money orders were forged". We find no merit in any of these contentions and affirm.

The parties entered into the following stipulations which provide the basic factual background of the case:

"On or about March 21, 1966 at Houston, Texas, in an armed robbery of Mading's Drug Store #4, 3845 Dunlavy, American Express Company money orders numbers DA 700 444 515 through DA 700 444 539 and DA 700 444 480 through DA 700 444 499 were stolen in blank. The American Express Company orders described above were taken by a person or persons unknown and no information is known to the government reflecting that Lynn Osburne Slayden participated in the theft of such money orders.

"On or about July 3, 1966 a person presented and cashed American Express Company money order number DA 700 444 539, being one of the money orders stolen in the robbery described above, in the amount of $97.95 payable to Thomas Tyrity at Minyard's Grocery Store #13, 202 Lake Highlands, Dallas, Texas. Latent fingerprints of Lynn Osburne Slayden, defendant, have been found to exist on American Express Company money order number DA 700 444 539 as described above.

"On or about July 3, 1966 American Express money order number DA 700 444 537 in the amount of $97.95 payable to Thomas Tyrity was presented and cashed at Minyard's Grocery Store #18, Dallas, Texas. Latent fingerprints of Lynn Osburne Slayden,

defendant, have been found to exist on American Express Company money order number DA 700 444 537 as described above.

"At the time money order number DA 700 444 537 was cashed at Minyard's Store #18 a 'Regiscope' photograph was taken simultaneously of the money order and a person presenting it for cashing.

"It is further agreed and stipulated that American Express Company money orders numbers DA 700 444 539, DA 700 444 537 and DA 700 444 538 were transported through normal banking channels in interstate commerce from Dallas, Texas to New York, New York for collection and payment.

"It is further stipulated and agreed that American Express Company money orders numbers DA 700 444 538, DA 700 444 537 and DA 700 444 539 are genuine, original, authentic documents and were not duly issued and sold by the American Express Company or its authorized agent or consignee and were returned to the respective stores at which cashed marked 'stolen'."

Aided by these stipulations, the government's case was brief and consisted solely of three exhibits and the testimony of Bob Conray Lyons, the security director for a J. C. Penney Company store in Dallas. Lyons testified that appellant was the man for whom he had cashed a money order payable to Thomas Tyrity after Slayden identified himself by presenting several credit cards in the same name. The defense consisted solely of the testimony of Robbie Lee Slayden, wife of the defendant. She testified that she had accompanied her husband on a trip to Dallas during which he participated in a poker game lasting 2½ days and won a pot containing American Express money orders which had been placed in the pot by another player, named "Tom", and that pursuant to prior agreement "Tom" had assisted in having the money orders cashed and had handed the money to defendant.

Appellant first urges that his motion for judgment of acquittal should have been granted because the government witness Lyons identified government's Exhibit Number 2 as the money order that was deposited in the bank account in the regular course of business of J. C. Penney, whereas in fact Exhibit No. 2 was not admitted for that purpose. This contention is completely devoid of substance. The following excerpt from the record makes clear what occurred:

"MR. TIMMINS: We will offer Government's *Exhibit Number 1* at this time. A copy has been furnished the defendant.

MR. DuVALL: No objection.

Q (By Mr. Timmins) All right. I hand you what has been introduced as Government's *Exhibit Number 2*. In the regular course of business of J. C. Penney's, was that then deposited in your bank account?

A Yes, sir, it was.

Q All right. And does a stamp on there reflect the date of receipt by the North Park National Bank?

A Yes, sir, it does.

Q What date?

A July the 5th, 1966.

MR. TIMMINS: All right. I will pass *Government's Exhibit Number 1* to the jury for examination.

Pass the witness.

MR. DuVALL: Your Honor, has Exhibit Number 2 been offered or not?

THE COURT: No.

MR. TIMMINS: Two?

MR. DuVALL: Uh-huh.

MR. TIMMINS: Number 1 has been offered.

THE COURT: It is received."

Counsel for Slayden then cross-examined the witness Lyons. Later in the trial, just before the government rested its case, it introduced in evidence as government Exhibit Number 2 *and* American Express money order with the last three digits "537", and as government's Exhibit Number 3 an American

Express money order with the last three digits "539". The reading of the transcript makes it unmistakably clear that the government attorney in the above quoted reference to "Government's Exhibit Number 2" really meant Exhibit Number 1. Earlier questioning by the government attorney referred to "money order No. 538" and it was then referred to as government's Exhibit Number 1. The use of the term "Government's Exhibit Number 2" was clearly a slip of the tongue. The very clarity of the error makes it obvious that the jury could not have misunderstood or have been misled. Government's Exhibit Number 2 and Exhibit Number 3 were introduced (over defense counsel's objection on the ground of relevancy and materiality) for the limited purpose of showing the intent of the defendant. Although appellant seeks to suggest that this momentary slip in language in some way resulted in the government's failure to prove that government Exhibit Number 1 was transported in interstate commerce, it had been clearly stipulated that all three money orders went through normal banking channels in interstate commerce from Dallas to New York.

 Appellant next alleges error in the admission of government Exhibits Number 2 and 3, on the ground that they were not properly identified and introduced. It is difficult to follow appellant's reasoning in regard to this contention. As will be seen by referring to the stipulations set forth above, it had been stipulated that American Express money orders ending in numbers 515 through 539 had been stolen in blank and that those numbered 537, 538 and 539, each in the amount of $97.95 and each payable to Thomas Tyrity, had been presented and cashed and that latent fingerprints of the defendant existed on those numbered 537 and 539. The defendant was indicted in respect to number 538. Government's Exhibit Number 2 was a money order numbered 537, and government's Exhibit Number 3 was the money order numbered 539. The trial court emphasized when he ad-

mitted these exhibits that money orders 537 and 539 were being admitted "for the limited purpose of showing intent and solely for the purpose of bearing on the defendant's intent with respect to the different money orders involved in this case". This limited purpose was referred to again in the trial court's instructions to the jury. Slayden does not complain of the admissibility of these exhibits for the limited purpose noted above, and acknowledges the principle that evidence of other acts is admissible to show intent. When they were offered, defendant objected on the ground of relevancy and materiality. Defendant does not renew that objection here, but contests only the matter of identification. It is clear that the exhibits referred to were fully identified and properly admitted.

Finally, Slayden contends that his motion for judgment of acquittal should have been granted because his conviction was based "on the ruling of an inference of knowledge of forgery upon the ruling of an inference that defendant knew the money orders were forged". In arguing this point, the appellant basically comes down to the contention that evidence as to his knowledge is insufficient or completely lacking. He relies upon Barry v. United States, 1961, 109 U.S.App.D.C. 301, 287 F.2d 340, 341, which reversed a conviction under this statute and which held that an integral part of the offense is knowledge of the false making and forging of the instrument. In that case, however, the reversal was based upon the trial court's failure to make clear the mental element of the offense. The charge in that case had entirely omitted "advice to the jury that the government must also establish knowledge on the part of the defendant that the check was falsely made and forged". The evidence of knowledge in that case was characterized as "not strong", mostly circumstantial, and not easily pieced together, and the court said that although it was sufficient to create a jury issue, its lack of clarity made it particularly important that the jury know that knowledge at

the time of transportation must be established beyond a reasonable doubt.

■ In the present case, on the other hand, the trial judge instructed the jury that one of the essential elements of the crime was "doing such act or acts willfully, with unlawful and fraudulent intent, and with knowledge that the security had been falsely made or forged". The jury was also instructed that: "If you should find beyond a reasonable doubt from the evidence in the case that the money order described in the indictment was stolen and that, while recently stolen, it was in the possession of the accused and was caused to be transported in interstate commerce as charged, you would ordinarily be justified in drawing from those facts the inference that the money order was transported or caused to be transported in interstate commerce by the accused with knowledge that it was stolen, unless possession of the recently stolen property by the accused is explained to your satisfaction by other facts and circumstances in evidence in the case".

It can thus be seen that the instructions here were entirely free from the deficiency noted in Barry v. United States, supra.

Appellant also seeks to rely upon Cloud v. United States, 8 Cir. 1966, 361 F.2d 627, which likewise involved stolen American Express money orders and which affirmed a conviction for violating the same statute. He alludes on brief to some differences in the factual situation in that case and the facts developed at the trial below. An examination of *Cloud,* however, shows no requirements for conviction differing from those required by the court below. Again, we find the appellant's argument difficult to follow. Certainly it cannot be seriously suggested that a conviction under the statute can be supported only by proof substantially similar to that in the *Cloud* case.

The evidence here, including the stipulations, was strong and clear, and the jury was carefully and fully advised as to the requirements of knowledge and intent, along with other elements of the crime.

The judgment of the district court is Affirmed.