UNITED STATES of America,
Plaintiff-Appellee,

v.

Edward Wayne BEVERLEY,
Defendant-Appellant.

No. 24022.

United States Court of Appeals
Ninth Circuit.

Sept. 15, 1969.

Robert H. Moore (argued), Reno, Nev., for appellant.

Robert S. Linnell, Las Vegas, Nev. (argued), Julien G. Sourwine, Asst. U. S. Atty., Reno, Nev., for appellee.

Before HAMLEY and MERRILL, Circuit Judges, and POWELL, District Judge.*

MERRILL, Circuit Judge:

Appellant, following jury trial, was convicted of aggravated mail robbery committed at the Steamboat, Nevada, Post Office, in violation of 18 U.S.C. § 2114.[1] He was given the mandatory 25 year sentence and has taken this appeal.

The indictment charged that appellant "put in jeopardy the lives of the [mail custodians] by the use of a dangerous weapon, to-wit, a loaded .357 Magnum Derringer-style pistol * * *."

Appellant admitted the robbery but denied that lives were put in jeopardy. He assigns as error the court's instructions respecting the nature of the offense,[2] and also the action of the court in sustaining an objection to a question put to appellant by his counsel respecting his intentions.[3]

■■ In regard to both assignments of error appellant's theory is that lives were not put in jeopardy by the use of the gun unless appellant intended to use the weapon, not simply for the purpose of creating fear, but for the purpose of actually inflicting death or great bodily harm if necessary to accomplish the robbery.

We do not agree. It is clear as the court instructed that more is needed than creation of fear.

"We agree that the aggravated form of robbery described in the latter part of Sec. 2114 as putting 'life in jeopardy by the use of a dangerous weapon' means more than a 'mere holdup by force and fear'. It must be a holdup involving the use of a dangerous weapon actually so used during the robbery that the life of the person being robbed is placed in an objective state of danger."

Wagner v. United States, 264 F.2d 524, 530 (9th Cir., 1959).

The test, however, is an objective one, United States v. Donovan, 242 F.2d 61 (2d Cir., 1957). Lives can be placed in jeopardy by use of a dangerous weapon irrespective of the intent of the user. Here both mail custodians testified that

---

* Honorable Charles L. Powell, United States District Judge, District of Washington, sitting by designation.

1. "Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years."

2. The jury was instructed, in part, as follows:

"The last essential element of the offense charged in the indictment is that the defendant put in jeopardy the lives of Mary Czykowski and Linda Boegle, or the life of either of them, by the use of a dangerous weapon.

"A dangerous weapon means anything capable of being readily operated, manipulated, wielded or otherwise used by one or more persons to inflict severe bodily harm or injury upon another person. So, an operable firearm, such as a pistol, revolver or other gun capable of firing a bullet or other ammunition may be found to be a dangerous weapon.

"To put in jeopardy the life of a person by the use of a dangerous weapon means, then, to expose such person to a risk of death by the use of such dangerous weapon. The term jeopardy means to be in danger as distinguuished from being in fear of danger or peril to life."

3. "Mr. Beverly, when you entered the Post Office, and told two women to give you these things that you wanted, which are in evidence, if they had refused what would you have done?

the gun was pointed at them. There was evidence that the gun was loaded.[4] At that point lives were in fact in jeopardy.[5]

■ Appellant further assigns as error the court's definition of a dangerous weapon (see footnote 2, supra) as "an operable firearm" or a "gun capable of firing a bullet." He contends that the jury might have found that although the gun was not loaded, it still met the definition since it was "capable of firing a bullet" and of being "wielded" to inflict harm.

No objection was interposed to the instruction. While the language may be said to be ambiguous in the abstract we do not regard it as plain error or as misleading under the circumstances. There is no suggestion that the gun was brandished as a club. The indictment specified a loaded gun. The court's emphasis upon the requirement that the victims actually be in danger clarifies the need for a loaded gun as distinguished from an unloaded one that, once loaded, might become dangerous.

■ Appellant contends that the mandatory 25 year sentence constituted cruel and unusual punishment.

While the wisdom of such a mandatory sentence is subject to severe question in the light of present generally accepted theories of correction, we cannot say that such a sentence for such a crime today amounts to cruel and unusual punishment. We note that it was recently accepted without question in Gregg v. United States, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969).

■ Appellant also attacks the mandatory sentence as denying him equal protection of the laws since other crimes, which appellant regards as equally serious, do not carry such extreme penalties and permit rehabilitative sentencing not available here. It is, however, for Congress and not the courts to determine the relative seriousness of different crimes and the relative need for deterrence. We cannot say that the Congressional judgment in these respects was wholly without justification.

Judgment affirmed.

---

4. When appellant was apprehended, minutes after the robbery following a high speed chase through heavy traffic, the gun was found to be loaded. Appellant asserted that it was not loaded at the time of the robbery but that after leaving the Post Office he had paused to load the gun.

5. See United States v. De Palma, 414 F.2d 393 (9th Cir. 1969) which discusses the problem in the context of bank robbery, 18 U.S.C. § 2113, and conduct necessary to constitute an assault with a dangerous weapon.