ROGER AMADO *vs.* SUPERINTENDENT, MASSACHUSETTS CORRECTIONAL INSTITUTION AT WALPOLE & others.[1]

Suffolk.    May 8, 1974. — July 23, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, & KAPLAN, JJ.

*Constitutional Law,* Equal protection of laws.    *Imprisonment.*

The provision of G. L. c. 127, § 129, as amended through St. 1965, c. 884, § 1, prohibiting prisoners convicted of certain sex offences from receiving good conduct deductions from sentence did not deny equal protection of the laws under the Fourteenth Amendment of the Federal Constitution or analagous provisions of the Massachusetts Constitution to a prisoner serving a sentence for rape. [46-51]

---

[1] The other defendants are the Commissioner of Correction and the Attorney General.

PETITION filed in the Supreme Judicial Court for the county of Suffolk on July 24, 1973.

The case was heard by *Wilkins, J.*

*Kay Hodge* for the plaintiff.

*Barbara A. H. Smith,* Assistant Attorney General, for the Superintendent, Massachusetts Correctional Institution at Walpole.

TAURO, C.J.  This case presents for our consideration the question whether G. L. c. 127, § 129, which prohibits persons convicted of certain sex offences from receiving the "good conduct" deductions from their prison sentences which are generally available to all other prisoners,[2] operates to deny the plaintiff equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution and the analogous provisions of the Massachusetts Constitution. We hold that it does not.

The plaintiff is now serving a five to seven-year sentence at the Massachusetts Correctional Institution at Walpole. Because his conviction was for the crime of rape, the plaintiff is barred by the terms of § 129 from receiving any good conduct deductions from his sentence. In 1973 the plaintiff filed a bill for declaratory relief in the county court in which he requested that § 129 be declared unconstitutional in so far as it bars certain classes of prisoners from receiving sentence deductions for good conduct. In

---

[2] General Laws c. 127, § 129, reads in part: "The officer in charge of each correctional institution or other place of confinement, except a defective delinquent department, shall keep a record of each prisoner in his custody whose term of imprisonment is four months or more. Every such prisoner whose record of conduct shows that he has faithfully observed all the rules of his place of confinement, and has not been subjected to punishment, shall be entitled to have the term of his imprisonment reduced by a deduction from the maximum term for which he may be held under his sentence or sentences, which shall be determined as follows: Upon a sentence of not less than four months and less than one year, two and one half days for each month; upon a sentence of not less than one year and less than two years, five days for each month; upon a sentence of not less than two years and less than three years, seven and one half days for each month; upon a sentence of not less than three years and less than four years, ten days for each month; upon a sentence of four years or more, twelve and one half days for each month; provided, however, that no prisoner serving a sentence imposed for a violation of section thirteen B, twenty-two, twenty-three, twenty-two A, twenty-four or twenty-four B of chapter two hundred and sixty-five or section seventeen, thirty-five or thirty-five A of chapter two hundred and seventy-two, or for an attempt to commit any crime referred to in said sections shall be entitled to have the term of his imprisonment under such sentence reduced under the provisions of this section."

addition, he requested that the defendants be ordered to reduce the plaintiff's maximum sentence by subtracting from it the deductions for good conduct to which, but for the exclusionary proviso of § 129, the plaintiff would have been entitled under the statute.[3] A single justice of this court heard the case on a statement of agreed facts and issued rulings and order for judgment in which he declared that the provisions of § 129 are constitutional as applied to the plaintiff. The case is before us on the plaintiff's exception to the ruling of the single justice.

The plaintiff's claim is based on the equal protection clause. In considering a similar challenge to an aspect of New York's statutory scheme of "good conduct" sentence deductions, the United States Supreme Court applied the "traditional" equal protection standard of review which limits judicial inquiry to the question "whether the challenged distinction rationally furthers some legitimate, articulated state purpose." *McGinnis* v. *Royster,* 410 U. S. 263, 270 (1973). The parties to this case agree that this is the proper standard of review. We must determine, therefore, only whether there is some rational basis for the exclusion of certain sex offenders from the sentence deduction scheme of § 129.

There are two aspects to the plaintiff's constitutional claim. It is first argued that the separate classification of certain sex offenders under § 129 bears no rational relationship to the sole "articulated" purpose of the statute, which is the inducement of good behavior by prison inmates. Since the State is interested in encouraging proper conduct by *all* prison inmates, regardless of the nature of the crimes which brought those inmates to prison in the first place, the plaintiff argues that it is irrational to deny some prisoners good conduct sentence deductions on the basis of the crimes they committed. We believe that the plaintiff has too narrowly construed the purposes underlying § 129.

---

[3] The plaintiff's prison term is measured from May 1, 1968, the date on which his sentence was imposed. If he were eligible for good conduct deductions he would be entitled to immediate release from prison.

We do not doubt that at least one of the legislative purposes behind § 129 is the encouragement of orderly conduct by prison inmates. That it is not the only purpose, however, is clear from the recent history of amendments to that section. Section 129 was largely rewritten in 1955. St. 1955, c. 770, § 66. Although the statute in that version did not deny good conduct deductions to any class of prisoners, it did impose a special condition of release on a particular group of sex offenders. Whereas most prisoners were to be granted final discharges after serving their sentences minus good conduct deductions, the statute required that those convicted under G. L. c. 265, § 23 (rape of a female child under sixteen years of age) were only to be released on parole. In 1960 the Legislature amended § 129 by, inter alia, extending the special release condition to apply to all prisoners who were convicted of any of the sex crimes which are enumerated in § 129 in its present form. (St. 1960, c. 524. St. 1960, c. 765, § 4.) Finally, in 1965, the Legislature amended the statute to its present form by denying altogether good conduct sentence deductions to those convicted of the enumerated sex crimes. St. 1965, c. 884, §§ 1, 2.

This history of § 129 demonstrates the Legislature's continuing concern, not just with insuring prison discipline, but also with regulating the time at which and the conditions under which persons convicted of certain sex offences are to be released from prison.[4] Quite clearly, the provisions of the earlier versions of the statute which required that such persons be released on parole rather than given general discharges were penal in nature and bore no relation to the goal of promoting the good behavior of prison inmates. Similarly, the present provision barring sex offenders from receiving good conduct sentence deductions

---

[4] The Legislature's particular concern that persons convicted of certain sex offences be closely supervised is evident in other sections of the General Laws. See, e.g., G. L. c. 127, § 49 (restriction on eligibility of specified sex offenders for programs outside a correctional facility); G. L. c. 127, § 83B (certain sex offenders ineligible for transfer to forestry camps); G. L. c. 127, § 133 (restriction on eligibility of certain sex offenders for parole).

is also designed to achieve a penal purpose. That § 129 generally is designed to achieve purposes other than the encouragement of prison discipline is also apparent from the provisions of the third paragraph of the section which deny good conduct credit to a prisoner serving a sentence as a result of a conviction for an offence committed in prison, and which forbid parole violators from receiving good conduct credit during the first six months after their return to prison. These provisions are also penal in nature. See *Allen* v. *Massachusetts Parole Bd.* 352 Mass. 471, 474 (1967); *Patrick* v. *Commissioner of Correction,* 352 Mass. 666, 669 (1967).

It is clear that a statute may properly serve more than one legislative purpose, and that a statutory classification will be upheld if it is rationally related to any such purpose. *McGinnis* v. *Royster,* 410 U. S. at 276-277 (1973). "[L]egislative solutions must be respected if the 'distinctions drawn have some basis in practical experience,' *South Carolina* v. *Katzenbach,* 383 U. S. 301, 331 (1966), or if some legitimate state interest is advanced, *Dandridge* v. *Williams,* 397 U. S. at 486 [1970]." *Id.* at 276. Thus, while we can agree with the plaintiff that singling out certain sex offenders and barring them from receiving good conduct credit bears no rational relationship to the purpose of encouraging exemplary behavior by prison inmates, this does not mean that no valid legislative purpose is served. The exclusionary proviso of § 129 is rationally related to the valid legislative purpose of determining the type and severity of punishments which are to be meted out for various crimes. The practical effect of that proviso is to increase the severity of the punishment for the specified sex crimes.[5] Cf. *Warden* v. *Marrero,* 417 U. S. 653, 661-664 (1974) (denial of parole eligibility for certain narcotic

---

[5] See G. L. c. 269, § 10, which includes in one paragraph the punishment for illegally carrying firearms and a provision that no good conduct sentence deductions will be permitted for multiple offenders. Although there is no difference between the effect of this section and the effect of the exclusionary proviso of § 129 when read in conjunction with the statutes which establish sentences for the specified sex crimes, nevertheless the plaintiff argues that the

offences is part of the punishment for those offences). It is certainly no denial of equal protection for the Legislature to impose stricter sentences for some crimes than for others. *United States* v. *Beverley,* 416 F. 2d 263, 265 (9th Cir. 1969). See *Hill* v. *Burke,* 289 F. Supp. 921, 929 (W. D. Wis. 1968), affd. 422 F. 2d 1195 (7th Cir. 1970), cert. den. 400 U. S. 944 (1970). We conclude that the separate treatment of some sex offenders in § 129 is rationally related to a legitimate governmental purpose.

The second aspect of the plaintiff's equal protection claim is that, even if the exclusionary proviso of § 129 bears a rational relationship to a legitimate State purpose, nevertheless it must be struck down because it is "irrationally underinclusive" in that it does not include many sex crimes which are virtually indistinguishable from those crimes which are included. The plaintiff is unable, however, to point to any sex crime which is not included in the exclusionary proviso which has the same elements as does the crime committed by the plaintiff, i.e., rape. Merely because the Legislature permits the award of good conduct credit to persons convicted of, for example, inducing a person under eighteen to engage in sexual intercourse, G. L. c. 272, § 4, or committing sexual intercourse with a female who is insane, G. L. c. 272, § 5, it is not required to permit such credit to those who, like the plaintiff, are convicted of rape. As the United States Supreme Court has said in a different context, "Evils in the same field may be of different dimensions and proportions, requiring different remedies." *Williamson* v. *Lee Optical of Okla. Inc.* 348 U. S. 483, 489 (1955). The Legislature may move "one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Ibid.* See *Mobil Oil Corp.* v. *Attorney Gen.* 361 Mass. 401, 417 (1972). Thus, the Legislature is not barred by the equal protection clause from determining that prisoners convicted of certain serious sex offences should not be granted the good conduct

former is valid while the latter is invalid. If such a distinction were to be recognized, in the words of the single justice, "form would be exalted over substance."

sentence deductions which are generally available to all other prisoners, including prisoners convicted of other sex crimes.

*Exceptions overruled.*