**Elmer HARPER, Jr., Plaintiff,**

v.

**Walter KELLY, Defendant.**

**No. 88 Civ. 1163 (RWS).**

United States District Court,
S.D. New York.

Jan. 4, 1989.

Elmer Harper, Jr., Comstock, N.Y., pro se.

Paul T. Gentile, Dist. Atty., Bronx County, Bronx, N.Y., for defendant; Stanley R. Kaplan, Asst. Dist. Atty., of counsel.

## OPINION

SWEET, District Judge.

*Pro se* petitioner Elmer Harper, Jr. ("Harper") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that his conviction was obtained in violation of his constitutional rights. For the reasons set forth below, his petition is denied.

### The Facts and the Petition

On May 9, 1984, Jack Small ("Small"), the service manager at the Sears Auto Center on Fordham Road in the Bronx, was instructed to take the day's cash receipts across the parking lot to the main store. Frank Lester ("Lester"), a security supervisor for Sears, accompanied Small. This was the first time that Small had been asked to take the cash to the main store. Small put a bag containing approximately $4,000 in cash into his vest pocket and began to walk across the parking lot with Lester. It was dusk, and the lights in the parking lot were not yet on, but Small testified that there was plenty of light.

As Small and Lester were crossing the lot, a man came from beyond a van, surprising them. The man asked Small for his vest; Lester told Small not to give the vest to him. The man pulled a gun from his waist, put it to Small's stomach, and told Small to give him the vest or he would "blow [his] fuckin' head off." Small gave the man the vest containing the money, and the man left. The incident lasted approximately 30 seconds.

Small and Lester contacted the police and described the robber as a Black man wearing a black rain hat that covered his hair, dark sunglasses, and various items of black clothing. Small said that the man had no mustache or beard; Lester said he had a small mustache.

Three weeks later, on May 29, 1984, Harper was arrested by another security officer for shoplifting at Sears. Lester spent an hour in the security office with Harper waiting for the police to arrive, and he heard Harper speak, but he did not recognize Harper as the robber from three weeks earlier.

On July 31, 1984, twelve weeks after the robbery, first Small and then Lester identified Harper at a lineup as the perpetrator of the May 9 robbery. Each participant at the lineup wore a hat and sunglasses. Shortly after Small was brought into the viewing room, the flood lights in the lineup room went out. Thus, apart from the first few seconds, only the fluorescent ceiling lights in the lineup room were on when Small viewed the lineup. Similarly, Lester observed the lineup with only the ceiling lights. Harper was sitting in the number one position.

### The Trial

Harper was charged with First Degree Robbery. His first trial, held in February 1985, resulted in a mistrial with the jury split eleven to one for acquittal. He was convicted after his second trial on October 4, 1985. Harper was sentenced as a second felony offender to a term of ten to twenty years imprisonment.

The main issue at Harper's trial was the identification of Harper as the perpetrator of the robbery. During defense counsel's cross-examination of Small, the prosecution objected to questions about Small's emotional state during the robbery, and to the question of whether Small had ever been robbed before. The Court sustained the prosecutor's objections to these questions and twice denied defense counsel's request

to approach the bench. Counsel was subsequently permitted to ask Lester, over the prosecutor's objection, whether he had ever been the victim of a robbery. Lester said that he had not.

In his summation, Harper's attorney told the jury that there was no evidence upon which it could conclude that Harper was guilty of the robbery other than the identification testimony of Small and Lester, and he argued that Small and Lester were "honestly mistaken" in their identification of Harper as the robber. The defense counsel also hinted that the lineup was unfair. In response, the prosecutor in his summation said that the defense was a "shotgun defense" and that it was full of "red herrings." The prosecutor also argued that neither Small nor Lester had a "motive to lie" in their identification of Harper as the perpetrator of the robbery, and that they would not accuse Harper of robbery "for the heck of it." Finally, he indicated his belief that the lineup had been fair, reminding the jury that all five men in the lineup were Black, and that all were wearing sunglasses, hats, and the same color jackets.

On September 30, 1986, Harper's conviction was affirmed without opinion by the Appellate Division of the Supreme Court. *People v. Harper*, 123 A.D.2d 528, 506 N.Y.S.2d 502 (1st Dept.1986). On November 24, 1986, the State of New York Court of Appeals denied his application for leave to appeal. *People v. Harper*, 68 N.Y.2d 1001, 510 N.Y.S.2d 1033, 503 N.E.2d 130 (1986).

In his petition for a writ of habeas corpus, Harper alleges as Ground One that the trial court deprived him of his Sixth Amendment right to confront witnesses against him by precluding defense counsel from questioning the prosecution's principal identification witness, Small, about his emotional state at the time of the robbery. Harper argues that such questioning was central to his claim of mistaken identification, for Small's emotional state affected his ability to observe the robber and to recognize him later. Harper alleges as Ground Two that the prosecutor violated his Fourteenth Amendment due process

right to a fair trial by unfairly criticizing the defense counsel and his arguments, by raising false arguments, and by interjecting his opinions in his summation.

*Exhaustion*

According to 28 U.S.C. §§ 2254(b) and (c), a state prisoner's application for a writ of habeas corpus in a federal court will not be granted unless the applicant has exhausted his state court remedies. When a petition for habeas corpus contains a mixture of exhausted and unexhausted claims, it must be dismissed by the district court. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1981).

The State argues that Harper failed to put the state court on notice of his second federal claim, his objection to the prosecutor's summation, for he did not demonstrate:

a) reliance on pertinent federal cases employing constitutional analysis, b) reliance on state cases employing constitutional analysis in like fact situation as, assertion of the claims in terms so particular as to call to mind a specific right protected by the Constitution, and c) allegation of a pattern of facts well within the mainstream of constitutional litigation.

*Daye v. Attorney General of New York*, 696 F.2d 186, 194 (2d Cir.1982). The State also cites *Petrucelli v. Coombe*, 735 F.2d 684, 690 (2d Cir.1984) for the proposition that a petitioner's allegation that he or she was denied a "fair trial" does not assert a specific constitutional right. Moreover, the State says that in his application for leave to appeal to the Court of Appeals, Harper raised as the only issue for appellate review the claim now designated as Ground One, and thereby compounded his failure to exhaust his state remedies as to his claim of prosecutorial misconduct.

■ While it is true that Harper failed to cite specific state or federal cases employing a constitutional analysis to support the second ground of his petition for habeas corpus, in his brief to the Appellate Division, First Department, he cited the Fourteenth Amendment of the United States Constitution in relation to his complaint

against the prosecutor's summation. This reference to a specific constitutional amendment is sufficient to have put the State on notice of Harper's federal constitutional claim. *See Daye v. Attorney General of New York*, 696 F.2d at 192 ("if the petitioner has cited the state courts to the specific provision of the Constitution relied on in his habeas petition, he will have fairly presented his legal basis to the state courts"). In addition, because Harper submitted a copy of his brief to the Appellate Division in his application for leave to appeal to the Court of Appeals, the Court of Appeals was on notice of both of defendant's constitutional claims, despite the fact that a letter to the Court of Appeals in support of the application for leave to appeal highlighted only Harper's first claim. Therefore, Harper has exhausted his state court remedies.

### Failure to Object

■ The State also argues that Harper's petition must be dismissed because Harper did not object at trial to the trial court's decision to preclude the defense from questioning Small as to his emotional state, or to the prosecutor's "misconduct" on summation, as required by N.Y.C.P.L. § 470.05(2).[1] As to Ground One of the petition, Harper objected adequately to preserve his right to appeal. After the trial court sustained the prosecutor's objection to questions about Small's emotional state, Harper's attorney twice requested a sidebar conference, but the judge denied his request. As for Ground Two, prosecutorial misconduct at summation, Harper's defense counsel objected only once to a particular statement in the summation, an objection which the trial judge overruled. However, this does not preclude this court

from considering the issue of the summation on the merits, for where the procedure followed at trial was at variance with the Constitution, there is an exception to the rule that an issue is not preserved for review when no objection is given. *People v. Andrews*, 109 A.D.2d 939, 486 N.Y.S.2d 428, 430–31 (3d Dept 1985). Thus, Harper's petition for a writ of habeas corpus cannot be denied on procedural grounds.

### The Right to Confront Witnesses as to Emotional State

■ A defendant has a fundamental right to confront witnesses against him. U.S. Const. amend. VI; *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974). Further, "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. *Id.* at 316, 94 S.Ct. at 1110. Although the scope of cross-examination is within the discretion of the trial court, *see, e.g., Davis v. Alaska*, 415 U.S. at 316, 94 S.Ct. at 1110; *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1985) ("trial judges retain wide latitude insofar as the Confrontation Clause is concerned"), the discretionary authority is subject to the 6th Amendment standard. *United States v. Lindstrom*, 698 F.2d 1154, 1160 (11th Cir.1983). *See also Alford v. United States*, 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931) ("it is the essence of a fair trial that reasonable latitude be given to the cross examiner.").

Harper argues that the right to confront witnesses gives a defendant a right to cross examine an identification witness on the circumstances under which he or she saw the perpetrator, and cites cases to support his position that the emotional re-

---

1. Section 470.05(2) states:

For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with

respect to the ruling or instruction known to the court. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

action of a robbery victim can have a bearing upon his or her identification. *United States v. Smith,* 563 F.2d 1361, 1363 (9th Cir.1977), *cert. denied,* 434 U.S. 1021, 98 S.Ct. 747, 54 L.Ed.2d 769 (1978); *Dickerson v. Fogg,* 526 F.Supp. 1299, 1307–1308 (S.D. N.Y.1981), *aff'd,* 692 F.2d 238 (2d Cir.1982). However, these cases are not applicable here. In *Dickerson,* there was no opportunity for the victim to see the robber before the attack began. Here, however, Lester and Small observed the assailant emerge from behind a van prior to the commission of the crime. Thus, they had the opportunity to view the robber before the crime and the attendant emotional response began. As for *United States v. Smith,* although the Second Circuit's opinion contains dicta that emotional factors are relevant in identification, the Court upheld the eyewitness identification, and held that "[w]hen there is some corroboration of [identification] . . . testimony, even greater reason exists for upholding the verdict of a jury which accepted it." 563 F.2d at 1363. In this case, Lester's identification of Harper as the perpetrator corroborates Small's testimony.

It is not necessary to reach the question of whether the refusal to allow cross-examination of Small's emotional state was a violation of Harper's constitutional rights, for even if Harper's rights were violated, the violation would be harmless error. In *Delaware v. Van Arsdall,* the Supreme Court held that harmless error analysis applies to "the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias." 475 U.S. at 684, 106 S.Ct. at 1438. Similarly, it applies to the denial of Harper's opportunity to question Small about his emotional state.

To determine whether an error is harmless, it is necessary to examine a variety of factors, including:

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted,

and, of course, the overall strength of the prosecution's case.

*Id.* Here, Harper was permitted lengthy cross-examination of Small and Lester. Although Lester's identification testimony was weakened by his failure to identify Harper as the robber when he was arrested for shoplifting, Lester provided additional, corroborating eyewitness identification confirming Small's identification of Harper. Moreover, Harper's counsel was permitted in his summation to argue that Small's emotional response to being robbed at gunpoint would have been one of fear, and he told the jury "I'm sure that both Mr. Lester and Mr. Small were very much afraid as any person would be with a gun stuck in your stomach especially, I'm sure, one that must appear to be twelve feet long." Finally, in its charge to the jury, the court included as a question the jury must ask itself: "[w]hat was the mental and emotional state of the witness?" Therefore, even if it was error for the trial court to preclude cross-examination on Small's emotional state, the error was harmless.

*Summation*

■ Harper's second ground for his petition for a writ of habeas corpus is that the prosecutor violated his due process right to a fair trial by criticizing and denigrating defense counsel and the defense with false arguments, vouching for his witnesses and interjecting his opinion as to the fairness of the lineup. As the Second Circuit explains, in *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974), the Supreme Court indicated that "constitutional error occurs only when the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair." *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir.1986). In this case, the prosecutor's summation comments do not rise to the level of a constitutional violation.

First, the terms "shotgun defense" and "red herrings" are merely rhetorical tactics which do not exceed the broad range of rhetorical comments allowed in closing arguments. *See People v. LaForge,* 483 N.Y. S.2d 842, 843, 107 A.D.2d 896, 897 (3d Dept.

1985) (prosecutor's description of the defense as "throwing up a smokescreen" was not "so egregious as to deny defendant her Constitutional right to a fair trial ..."); *United States v. Marrale*, 695 F.2d 658, 666 n. 9 (2d Cir.1982), *cert. denied*, 460 U.S. 1041, 103 S.Ct. 1434, 75 L.Ed.2d 793 (1983) (characterization of defense as "woven out of the thread of desperation and thread that unwravel [sic] before you ..." did not deprive defendant of a fair trial); *U.S. v. Peterson*, 808 F.2d 969, 977 (2d Cir.1987) (reference to witness's rap sheet as "longer than the jury rail" was not improper). Moreover, the comments in no way "inflame the passions or prejudices of the jury," which the American Bar Association Standard 3–5.8(c) deems improper. *See United States v. Marrale*, 695 F.2d at 667 (prosecutor's admonishing jury not to "be fooled" by the defense arguments did not inflame the passions); *U.S. v. Peterson*, 808 F.2d at 977 (2d Cir.1987) (characterization of a witness' testimony did not have the purpose of appealing to the jury's emotions).

Second, the prosecutor's contention that Small and Lester were not the kind of people who would accuse someone of a robbery "for the heck of it," and his statement that neither Small nor Lester had a motive to lie, was not a constitutional violation. *See United States v. Ricco*, 549 F.2d 264, 274 (2d Cir.), *cert. denied, Indiviglia v. United States*, 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977) (remarks by prosecutor that government accomplice witnesses would be subject to indictment for perjury and previously uncharged offenses in the event they testified falsely constituted permissible argument that the witnesses had no motive to testify falsely).

As for the prosecutor's characterization of the lineup as fair, it is not a violation of Harper's constitutional rights in light of the evidence provided at trial and the fact that the defense had questioned the fairness of the lineup. *See U.S. v. Marrale*, 695 F.2d at 667 ("since a prosecutor is ordinarily entitled to respond to the evidence, issues and hypotheses propounded by the defense," the court did not find the

summation to be improper) (citations omitted).

*Conclusion*

For the reasons discussed above, Harper's petition for a writ of habeas corpus is dismissed. Probable cause to appeal this opinion is granted.

It is so ordered.