UNITED STATES of America,
Plaintiff—Appellee,

v.

JUVENILE, Defendant—Appellant.

No. 05–10461.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 7, 2006.

Decided April 18, 2006.

---

Celeste Corlett, USTU–Office of the U.S. Attorney, Evo A. Deconcini, U.S. Courthouse, Tucson, AZ, for Plaintiff–Appellee.

* The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

Geoffrey T. Cheshire, Esq., FPDAZ–Federal Public Defender's Office, Tucson, AZ, for Defendant–Appellant.

Before: SILER*, BERZON, and BYBEE, Circuit Judges.

## MEMORANDUM**

The facts are known to the parties, and are not recounted here.

■ Viewing "the evidence in the light most favorable to the prosecution," *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), sufficient evidence was presented at J.G.-A.'s trial to enable a reasonable finder of fact to conclude that he violated 21 U.S.C. § 841(a) by knowingly and intentionally possessing over 250 pounds of marijuana. The Customs and Border Protection official stationed at the border checkpoint on the date of the incident in question testified at trial and conclusively identified G.-A. as the driver and sole occupant of the vehicle that contained the illegal narcotics. "[T]he testimony of one witness, if solidly believed, is sufficient to prove the identity of a perpetrator of crime." *United States v. Smith,* 563 F.2d 1361, 1363 (9th Cir.1977); *see also United States v. Ginn,* 87 F.3d 367, 369 (9th Cir.1996).

■ Additionally, we have repeatedly held that when a defendant is the driver and sole occupant of a vehicle containing a large amount of illegal narcotics, this is sufficient to support an inference that he

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

knowingly possessed those narcotics with the intent to distribute them. *See, e.g., United States v. Davila–Escovedo,* 36 F.3d 840, 843 (9th Cir.1994). This inference was further supported by testimony that G.-A. fled on foot back to Mexico after his vehicle was referred to secondary inspection; evidence of flight can be indicative of guilt. *See United States v. Dixon,* 201 F.3d 1223, 1232 (9th Cir.2000). We therefore affirm G.-A.'s adjudication as a juvenile delinquent under the FJDA.

■ G.-A. also challenges his sentence, arguing that the district court did not appropriately consider the rehabilitative goals of the FJDA. We reject this claim. G.-A. had already amassed a serious criminal record, and the district court was well aware that the juvenile facility would afford G.-A. access to various services designed to promote his rehabilitation. Indeed, the district court specifically noted one such service in particular: legal assistance with respect to his citizenship status. We also note that the twenty-four-month sentence imposed in this case was well below the range recommended by the United States Sentencing Guidelines and less severe than that suggested by the American Bar Association. *See* 21 U.S.C. § 841(b)(1)(B)(vii) (2000 & Supp.2002); AM. BAR ASS'N, ABA JUVENILE JUSTICE STANDARDS: STANDARDS RELATING TO JUVENILE DELINQUENCY AND SANCTIONS §§ 4.2(B)(1), 5.2(A)(1) (1980); *cf. United States v. Juvenile,* 347 F.3d 778, 787–88 (9th Cir.2003). We conclude that the district court gave due regard to the purposes underlying the FJDA and therefore did not abuse its discretion in fashioning an appropriate sentence.

AFFIRMED.

BERZON, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's conclusion that the government presented sufficient evidence at trial to support the district court's adjudication of juvenile delinquency. I take a different view, however, on the question of whether the district court properly considered the rehabilitative aspects of the Federal Juvenile Delinquency Act (FJDA), 18 U.S.C. §§ 5031–5042, as required by our prior opinion in *United States v. Juvenile,* 347 F.3d 778 (9th Cir. 2003), in fashioning the sentencing in this case.

We stated in *Juvenile* that the rehabilitative function behind the FJDA "requires an assessment of the totality of the unique circumstances and rehabilitative needs of each juvenile." 347 F.3d at 787. To that end, we held that "[i]t must be clear from the record, if not explicit, that a district court weighed all of the relevant factors and found that the disposition imposed was the least restrictive means to accomplish a young person's rehabilitation, given the needs of the child and the community," and that "the District Court must provide a reasoned basis for why it has rejected less restrictive interventions." *Id.* at 787–88.

I cannot say that the requirements of *Juvenile* were met in this case. The district court's comments at G.-A.'s sentencing indicated consideration only of punitive and deterrent factors. The district court's statement that G.-A. had "become a drug smuggler" who was going to "pay the price" indicates that the twenty-four months of incarceration "was imposed for purely punitive or incapacitating purposes," and that the rehabilitative goals of the FJDA fell by the boards. *Id.*

I share the concern of the majority and the district court that G.-A. had already amassed a distressingly serious criminal record by the time of the disposition hearing. It may very well be that the district court believed that in light of G.-A.'s litany of criminal convictions, rehabilitation could only be achieved by some term of incarcer-

ation. But *Juvenile* requires that the district court at least consider the alternatives to incarceration and explain why they are not feasible to achieve rehabilitation. Here, the word rehabilitation is not even *mentioned,* let alone discussed, by the district judge at the imposition of sentence. Nor did the district judge explain why he chose to depart from the recommendation of the Department of Probation that G.-A. be sentenced only to a term of supervised probation because he had already "spent three months in custody pending disposition, and it is not believed additional detention would further his rehabilitation."

I am fully cognizant that vacating G.-A.'s sentence and remanding to the district court with instructions to resentence him in light of the rehabilitative purposes of the FJDA may well be a futile exercise. Nonetheless, there is value to the legal system generally in insisting that district judges proceed along prescribed paths in making decisions. Among other reasons for so mandating is that words *can* influence actions. A course that at first blush seems appropriate to the district judge may be recognized as improper when the judge tries to justify it as precisely as the law requires.

By affirming the sentence imposed in this case, the majority has permitted this district court to disregard *Juvenile* and its mandate that sentences imposed pursuant to the FJDA should be designed with an eye towards rehabilitation, and not simply punishment. I therefore respectfully dissent.